## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DEMOCRACY FORWARD FOUNDATION,
P.O. Box 34553
Washington, D.C. 20043,

*Plaintiff*,

vs.

U.S. DEPARTMENT OF JUSTICE,
950 Pennsylvania Avenue, NW
Washington, DC 20530

U.S. DEPARTMENT OF HOMELAND
SECURITY
2707 Martin Luther King Jr Ave, SE
Washington, DC 20528

U.S. DEPARTMENT OF STATE
2201 C Street, NW
Washington, DC 20520

*Defendants*.

Case No. 25-cv-1535

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Democracy Forward Foundation brings this action against Defendants U.S. Department of Justice ("DOJ"), U.S. Department of Homeland Security ("DHS"), and the U.S. Department of State ("State") to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Plaintiff alleges as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

2.      Venue is proper under 28 U.S.C. § 1391(e), as Defendants' headquarters are located in Washington, D.C., within this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

**Parties**

3.      Plaintiff Democracy Forward Foundation ("Democracy Forward") is a not-for-profit organization incorporated under the laws of the District of Columbia and based in Washington, D.C. Plaintiff works to promote transparency and accountability in government, in part, by educating the public on government actions and policies.

4.      Defendant DOJ is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is headquartered in Washington, D.C.  DOJ has possession, custody, and control of records to which Plaintiff seeks access.

5.      Defendant DHS is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is headquartered in Washington, D.C.  DHS has possession, custody, and control of records to which Plaintiff seeks access.

6.      Defendant State is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is headquartered in Washington, D.C.  State has possession, custody, and control of records to which Plaintiff seeks access.

**Facts**

7.      In early February 2025, it was publicly reported that the Trump Administration had reached an agreement with El Salvador to detain people sent by the United States government to El Salvador in Salvadoran jails and prisons.[1]

---

[1] Marcos Alemán, *What To Know About El Salvador's Mega-Prison After Trump Deal To Send People There*, AP News (Feb. 5, 2025), https://apnews.com/article/el-salvador-us-rubio-prison-de912f6a8199aaa7c8490585dcaa3b87.

8.      This agreement followed a trip by Secretary of State Marco Rubio to El Salvador.

9.      Secretary Rubio stated after meeting with Salvadoran President Nayib Bukele: "We can send them, and he will put them in his jails. . . . And, he's also offered to do the same for dangerous criminals currently in custody and serving their sentences in the United States even though they're U.S. citizens or legal residents."[2]

10.     Following these reports, on March 15, 2025, the Trump Administration sent more than 200 individuals in the government's custody to El Salvador, where they have since been held in carceral facilities, including in El Salvador's Terrorism Confinement Center, known as CECOT.[3]

11.     The United States government sent additional individuals to El Salvador for continued detention on March 31, 2025.[4]

12.     A significant number of these individuals were sent to carceral facilities in El Salvador under the U.S. government's assertion that they were subject to the Alien Enemies Act.

13.     The individuals sent to El Salvador are reportedly being held under an agreement with El Salvador.[5]

---

[2] Matthew Lee, *Rubio Says El Salvador Offers to Accept Deportees from US of Any Nationality, Including Americans*, AP News (Feb. 4, 2025), https://apnews.com/article/migration-rubio-panama-colombia-venezuela-237f06b7d4bdd9ff1396baf9c45a2c0b.
[3] Zolan Kanno-Youngs et al., *Behind Trump's Deal to Deport Venezuelans to El Salvador's Most Feared Prison*, N.Y. Times (May 1, 2025), https://www.nytimes.com/2025/04/30/us/politics/trump-deportations-venezuela-el-salvador.html.
[4] Devlin Barrett et al., *U.S. Deports More Detainees to El Salvador, Calling Them 'Violent Criminals'*, N.Y. Times (Mar. 31, 2025), https://www.nytimes.com/2025/03/31/us/politics/trump-deportations-venezuelans-el-salvador.html.
[5] *Id.*

14.    In addition to the agreement reported in February, the Trump Administration exchanged other records with El Salvador on or around March 14, 2025, that contained terms of an agreement to receive and detain people in the custody of the United States.[6]

15.    On April 9, 2025, Homeland Security Secretary Kristi Noem stated that the Trump Administration was "confident" that the detainees sent to and held in El Salvador "should be there, and they should stay there for the rest of their lives."[7]

16.    During this period, it was also revealed that numerous high-ranking government officials in the Trump Administration, including Secretary of State Rubio, had used the Signal and TeleMessage messaging applications to communicate regarding government business, including regarding sensitive foreign affairs matters.[8]

*Agreements and Directives Request (All Defendants)*

17.    On March 26, 2025, Democracy Forward sent an identical FOIA request separately to DOJ, DHS, and State asking that each agency respectively produce the following:

(1) Any directive, instruction, or guidance issued by the Office of the Secretary, the Office of the Attorney General, or the Office of General Counsel regarding decisions around deporting alleged members of the Tren de Aragua gang or the usage of the Alien Enemies Act.

(2) Any legal analyses regarding contracting with foreign governments to detain people on behalf of the U.S. government, including but not limited to any legal analyses regarding the U.S.'s agreement with the government of El Salvador to accept deportees of any nationality to imprison in El Salvadoran jails.

---

[6] *Id.*

[7] Brittany Gibson, *Migrant Detainees Should Be in El Salvador Prison "For the Rest of Their Lives," Noem Says*, Axios (Apr. 9, 2025), https://www.axios.com/2025/04/09/kristi-noem-migrants-trump-ice-prison.

[8] Jeffrey Goldberg, *The Trump Administration Accidentally Texted Me Its War Plans*, The Atlantic (Mar. 24, 2025), https://www.theatlantic.com/politics/archive/2025/03/trump-administration-accidentally-texted-me-its-war-plans/682151/; Isabella Kwai et al., *Waltz's Use of Messaging Platform Raises New Security Questions*, N.Y. Times (May 2, 2025), https://www.nytimes.com/2025/05/02/us/politics/mike-waltz-signal-photo.html.

(3) Any draft or final copies (either signed or unsigned) of Memoranda of Understanding (MOU), Memoranda of Agreement (MOA), or other similar agreement record between the U.S. and El Salvador to detain deportees from the U.S. in jails in El Salvador, including but not limited to agreements regarding detaining alleged members of the Tren de Aragua ("TdA") gang at their Terrorism Confinement Center ("CECOT").

18.     This request sought all records from January 20, 2025, until the date of the search.

19.     On April 1, 2025, DOJ's FOIA referral unit within the Justice Management Division ("JMD") acknowledged Democracy Forward's request, assigning it tracking number EMRUFOIA032625. JMD assessed that the Office of Information Policy ("OIP") was the DOJ component most likely to have control over responsive records.

20.     On April 2, 2025, DOJ's Office of Information Policy ("OIP") acknowledged Democracy Forward's request and assigned it tracking number FOIA-2025-03592.

21.     Democracy Forward has not received any further communication from DOJ regarding this request.

22.     On April 7, 2025, State acknowledged this request and assigned it tracking number F-2025-13423.

23.     On April 9, 2025, State sent an automated email notifying Democracy Forward that processing of the request was "In Process."

24.     Democracy Forward has not received any further communication from State regarding this request.

25.     On April 14, 2025, DHS acknowledged this request and assigned it tracking number 2025-HQFO-03130.

26.     Democracy Forward has not received any further communication from DHS regarding this request.

*DHS Leadership Messages Request (2025-HQFO-03131)*

27.     On March 26, 2025, Democracy Forward sent a FOIA request to DHS seeking the following:

> (1) All text messages or messages on messaging platforms (such as Signal messages, X Direct messages, Slack, WhatsApp, Teams, GChat or Google Hangouts, etc.) sent and received by the DHS officials listed below that concern official business:
>
> > Officials:
> > I.     Secretary Kristi Noem
> > II.    Deputy Secretary Troy Edgar
> > III.   Anyone serving as Chief of Staff to Secretary Noem
>
> (2) All text messages or messages on messaging platforms (such as Signal messages, X Direct messages, Slack, WhatsApp, Teams, GChat or Google Hangouts, etc.) sent and received by the DHS officials listed in Item 1 that include any of the following terms:
>
> > I.      "Alien Enemies Act"
> > II.     AEA
> > III.    "Tren de Aragua"
> > IV.     TdA
> > V.      "Terrorism Confinement Center"
> > VI.     CECOT
> > VII.    Thugs
> > VIII.   Boasberg
> > IX.     "Court Order"
>
> (3) Records sufficient to identify the (1) group names (2) deletion timelines (3) channel participants for all Signal groups on any devices DHS officials listed in Item 1 use for official business.

28.     This request sought records from January 20, 2025, through the date of the search.

29.     On Friday, March 28, 2025, DHS acknowledged this request and assigned it tracking number 2025-HQFO-03131.

30.     Two business days later, on April 1, 2025, DHS sent a final response to the request indicating that no responsive records were identified after "an adequate search was conducted." Exhibit 1.

31.     On April 2, 2025, Democracy Forward appealed this response citing, among other issues, the lack of information regarding search efforts, the rapid speed of the response, and the widespread use of messaging applications by senior administration officials. *Id.*

32.     On May 2, 2025, DHS acknowledged Democracy Forward's appeal, assigning it tracking number 2025-HQAP-00402.

33.     Democracy Forward has received no further communication from DHS regarding this request and appeal.

*DOJ Leadership Messages Request (FOIA-2025-03594)*

34.     On March 26, 2025, Democracy Forward sent a FOIA request to DOJ seeking the following:

(1) All text messages or messages on messaging platforms (such as Signal messages, X Direct messages, Slack, WhatsApp, Teams, GChat or Google Hangouts, etc.) sent and received by the DHS officials listed below that concern official business:

> Officials:
> I.    Attorney General Pamela Bondi
> II.   Deputy Attorney General Todd Blanche
> III.  Chief of Staff Chad Mizelle

(2) All text messages or messages on messaging platforms (such as Signal messages, X Direct messages, Slack, WhatsApp, Teams, GChat or Google Hangouts, etc.) sent and received by the DHS officials listed in Item 1 that include any of the following terms:

> I.     "Alien Enemies Act"
> II.    AEA
> III.   "Tren de Aragua"
> IV.    TdA
> V.     "Terrorism Confinement Center"
> VI.    CECOT
> VII.   Thugs
> VIII.  Boasberg
> IX.    "Court Order"

(3) Records sufficient to identify the (1) group names (2) deletion timelines (3) channel participants for all Signal groups on any devices DHS officials listed in Item 1 use for official business.

35.     The request sought records from January 20, 2025, through the date of the search.

36.     On April 2, 2025, DOJ OIP acknowledged Democracy Forward's request, assigning it request number FOIA-2025-03594.

37.     Democracy Forward has received no further communication from DOJ regarding this request.

*State Leadership Messages Request (F-2025-13426)*

38.     On March 26, 2025, Democracy Forward sent a FOIA request to State seeking the following:

(1) All text messages or messages on messaging platforms (such as Signal messages, X Direct messages, Slack, WhatsApp, Teams, GChat or Google Hangouts, etc.) sent and received by the [Department of State] officials listed below that include any of the following terms:
Officials:
  i.     Secretary Marco Rubio
  ii.    Counselor and Chief of Staff Mike Needham
  Terms:
    I.    "Alien Enemies Act"
   II.    AEA
  III.   "Tren de Aragua"
  IV.   TdA
   V.   "Terrorism Confinement Center"
  VI.   CECOT
  VII.  Thugs
 VIII.  Boasberg
  IX.   "Court Order"

(2) Records sufficient to identify the (1) group names (2) deletion timelines (3) channel participants for all Signal groups on any devices DOS officials listed in Item 1 use for official business.

39.     The request sought records from January 20, 2025, through the date of the search.

40.    April 2, 2025, State acknowledged Democracy Forward's request and assigned it request number F-2025-13426.

41.    Democracy Forward has received no further communication from State regarding this request.

*Exhaustion of Administrative Remedies*

42.    As of the date of the Complaint, Defendants have failed to notify Democracy Forward of determinations regarding Democracy Forward's Agreements and Directives, DOJ Leadership Messages, and State Leadership Messages FOIA requests. Defendant DHS has failed to notify Democracy Forward of a determination on its appeal of the DHS Leadership Messages request. Through Defendants' failure to respond within the time limits required by law, Democracy Forward has constructively exhausted administrative remedies.

## CLAIM FOR RELIEF

## Count 1 (Violation of FOIA, 5 U.S.C. § 552)

43.    Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

44.    By failing to respond to Plaintiff's requests and appeal with determinations within the statutorily mandated time period, Defendants have violated their duties under 5 U.S.C. § 552, including but not limited to, their duties to conduct a reasonable search for responsive records, to take reasonable steps to release all nonexempt information, and to not withhold responsive records.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

1.   Order Defendants to conduct searches for any and all responsive records to Plaintiff's FOIA requests using search methods reasonably calculated to lead to discovery of all responsive records;

2.   Order Defendants to produce, by a date certain, any and all non-exempt responsive records and a *Vaughn* index of any responsive records withheld under a claim of exemption;

3.   Enjoin Defendants from continuing to withhold any and all non-exempt responsive records;

4.   Order Defendants to grant Plaintiff's requests for fee waivers;

5.   Award Plaintiff its costs, attorneys' fees, and other disbursements for this action; and

6.   Grant any other relief this Court deems appropriate.

Dated: May 14, 2025                        Respectfully submitted,

                                           /s/ *Daniel A. McGrath*

                                           Daniel A. McGrath
                                           (D.C. Bar No. 1531723)
                                           Robin F. Thurston
                                           (Bar No. 7268942)
                                           Democracy Forward Foundation
                                           P.O. Box 34553
                                           Washington, D.C. 20043
                                           (202) 448-9090
                                           dmcgrath@democracyforward.org
                                           rthurston@democracyforward.org

Exhibit 1



April 2, 2025

**VIA Electronic Delivery & Mail**

Privacy Office, Attn: FOIA Appeals
U.S. Department of Homeland Security
2707 Martin Luther King Jr Ave SE, Mail Stop 0655
Washington, DC 20528-0525
foia@hq.dhs.gov

**Re: Appeal of Response to Freedom of Information Act Request #2025-HQFO-03131**

Dear FOIA Officer:

We write to appeal DHS's response to our attached FOIA request, which sought *any* text messages or similar electronic messages of several high-ranking officials that concerned official government business.

1. All text messages or messages on messaging platforms (such as Signal messages, X Direct messages, Slack, WhatsApp, Teams, GChat or Google Hangouts, etc.) sent and received by the DHS officials listed below that concern official business:
   Officials:
   a. Secretary Kristi Noem
   b. Deputy Secretary Troy Edgar
   c. Anyone serving as Chief of Staff to Secretary Noem

2. All text messages or messages on messaging platforms (such as Signal messages, X Direct messages, Slack, WhatsApp, Teams, GChat or Google Hangouts, etc.) sent and received by the DHS officials listed in Item 1 that include any of the following terms:
   Terms:
   I. "Alien Enemies Act"
   II. AEA
   III. "Tren de Aragua"
   IV. TdA
   V. "Terrorism Confinement Center"
   VI. CECOT
   VII. Thugs
   VIII. Boasberg
   IX. "Court Order"

3. Records sufficient to identify the (1) group names (2) deletion timelines (3) channel participants for all Signal groups on any devices DHS officials listed in Item 1 use for official business.

   A search for responsive records should include both government-issued and personal devices on both classified and unclassified systems.

   This request seeks records from January 20, 2025, until the date of the search.

DHS quickly–in less than one week–responded that it had located no records.

DHS's response did not provide an adequate administrative determination that would allow Democracy Forward to fulsomely appeal this response. DHS baldly asserted that an "adequate search" was conducted, without providing any details whatsoever about the search methods employed, including but not limited to the devices and systems searched for responsive records.

Notwithstanding the inadequacy of detail in DHS's response, Democracy Forward also appeals because it is implausible that an adequate search was conducted so quickly and that no responsive records were identified. Democracy Forward sought any text messages or similar records concerning any official business of three DHS officials. Officials are generally assigned official phones with messaging applications that are regularly used to communicate, and as of the fall of 2024 more than 38 percent of DHS employees had government-issued mobile devices, totaling 90,000 in use.[1] The absence of even a single record following a reasonably-calculated search is implausible.  In the absence of any search information, this leads to the rational conclusion that the search was *not* reasonably calculated to uncover all relevant documents.

Furthermore, reports have indicated that personal devices are widely used by senior Trump Administration officials to communicate via Signal, personal email, and other forms of electronic messaging. Reporting this week by the *Washington Post* noted that National Security Adviser

---

[1] David Dimolfetta, *"The DHS Cyber Safety Review Board is already slated to investigate the hacking collective, dubbed Salt Typhoon, and its intrusion into telecommunications firms and wiretap infrastructure,"* Next Gov (Nov. 8, 2024), https://www.nextgov.com/cybersecurity/2024/11/dhs-issues-internal-comms-guidance-amid-telecom-breach-investigation/400956/;
Department of Homeland Security, *"General Rules of Behavior for Users of DHS Systems and IT Resources that Access, Store, Receive, or Transmit Sensitive Information,"* https://www.ice.gov/doclib/sevis/pdf/behavior-rules.pdf;
Department of Homeland Security Science and Technology, "Archived: *Mobile Device Security,"* (Aug. 2, 2024), https://www.dhs.gov/archive/science-and-technology/mobile-device-security;
Maggie Miller, *"Gabbard says Signal comes 'pre-installed' on government devices,"* Politico (Mar. 26, 2025), https://www.politico.com/news/2025/03/26/gabbard-signal-government-devices-cybersecurity-00250731;
Scott MacFarlane, *"Senators issued satellite phones, offered demonstrations on upgraded security devices,"* CBS News (May 24, 2023), https://www.cbsnews.com/news/senators-issued-satellite-phones-new-security-measures/.

Mike Waltz and his staff conduct government business over personal Gmail accounts and have set up at least 20 Signal group chats for different crises, including using it for highly technical conversations with colleagues at other agencies involving sensitive military positions and powerful weapons systems relating to ongoing conflicts.[2] This news follows reporting in *The Atlantic* last week that Waltz created a Signal group chat to discuss sensitive information on a military strike against Yemen's Houthis and included journalist Jeffrey Goldberg in that conversation. Defense Secretary Pete Hegseth, Middle East envoy Steve Witkoff, CIA Director Ratcliffe, Deputy Chief of Staff for Policy and Homeland Security Advisor Stephen Miller, and others were included in that Signal chat. Numerous defense and national security officials have highlighted that Hegseth sharing information via Signal could have put the success of the mission and the lives of those military members involved at risk if that information had gotten into the wrong hands.[3] There were additional concerns around Witkoff being included in such a group when he was in Moscow–although Witkoff has acknowledged he did not have his personal device with him on the trip, clearly implying that these Signal messages were on his personal device.[4] Further, declarations in litigation regarding CIA Director Ratcliffe's records indicate that he, too, was using personal accounts to participate in this Signal thread.[5]

During this past transition period, the Trump transition team utilized private servers, laptops, and cell phones instead of government-issued devices to conduct transition efforts. This decision broke with tradition, raising concerns about how such a move could hinder ethics and transparency requirements; and delay transition efforts given concerns of providing sensitive information with non-secure devices.[6]

An adequate search, given this modus operandi, would have to encompass personal devices. There is no indication in DHS's bare response that such a search was conducted.

---

[2] John Judson, *"Mike Waltz and staff used Gmail for government communications, officials say,"* The Washington Post (Mar. 31, 2025), https://www.washingtonpost.com/national-security/2025/04/01/waltz-national-security-council-signal-gmail/; Dasha Burns, *"Waltz's team set up at least 20 Signal group chats for crises across the world,"* Politico (May 2, 2025), https://www.politico.com/news/2025/04/02/waltzs-team-set-up-at-least-20-signal-group-chats-for-crises-across-the-world-00266845.

[3] Natasha Bertrand, Zachary Cohen, Betsy Klein and Shania Shelton, *"Sources say the details shared by Hegseth in Signal chat were classified as Atlantic publishes additional messages,"* CNN (Mar. 26, 2025), https://www.cnn.com/2025/03/26/politics/the-atlantic-publishes-signal-messages-yemen-strike/index.html.

[4] Brad Heath (@bradheath.bsky.social), "Steve Witkoff, President Trump's special envoy, appears to confirm on X that his participation in the Signal discussion about impending attacks on Yemen was done using his personal phone. He had a "secure phone provided by the government" during his trip to Moscow, but says he didn't use that," BlueSky (Mar. 26, 2025), https://bsky.app/profile/bradheath.bsky.social/post/3llbwtksmk227.

[5] American Oversight v. Pete Hegseth, Case No. 1:25-cv-00993-JEB, Defendant Status Report Exhibit 1, at 4, https://www.documentcloud.org/documents/25875682-march-31-2025-american-oversight-v-hegseth-gabbard-ratcliffe-bessent-rubio-and-nara-defendant-status-report/.

[6] Alice Miranda Ollstein, *"Trump's transition is happening over private emails. Federal officials are nervous,"* Politico (Dec. 18, 2024), https://www.politico.com/news/2024/12/18/federal-officials-nervous-about-sending-data-to-trump-transition-private-emails-00195217.

We appreciate your assistance and look forward to your prompt response.

Sincerely,

*/s/ Skye Perryman*
Skye Perryman
President & CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043



FOIA Requests <foia@democracyforward.org>

---

# Department of Homeland Security FOIA 2025-HQFO-03131 Final Response
1 message

---

**foia@hq.dhs.gov** <noreply@securerelease.us>                                    Tue, Apr 1, 2025 at 12:24 PM
Reply-To: foia@hq.dhs.gov
To: foia@democracyforward.org

04/01/2025


Skye Perryman
Democracy Forward Foundation


Re:  2025-HQFO-03131


Dear Requester:

This is the electronic final response to your Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), dated 3/26/2025, and received by this office on 3/26/2025.  You are seeking all text messages or messages on messaging platforms (such as Signal messages, X Direct messages, Slack, WhatsApp, Teams, GChat or Google Hangouts, etc.) sent and received by the DHS officials listed below that concern official business:

Officials:
Secretary Kristi Noem
Deputy Secretary Troy Edgar
Anyone serving as Chief of Staff to Secretary Noem

All text messages or messages on messaging platforms (such as Signal messages, X Direct messages, Slack, WhatsApp, Teams, GChat or Google Hangouts, etc.) sent and received by the DHS officials listed in Item 1 that include any of the following terms:

Terms:
"Alien Enemies Act"
AEA
"Tren de Aragua"
TdA
"Terrorism Confinement Center"
CECOT
Thugs
Boasberg
"Court Order"

We conducted tasked the Office of Chief Information Officer (OCIO) for a comprehensive search of files within DHS for records that would be responsive to your request.  Unfortunately, they were unable to locate or identify any responsive records.

While an adequate search was conducted, you have the right to appeal this determination that no records exist within DHS Privacy Office that would be responsive to your request.  Should you wish to do so, you must send your appeal and a copy of this letter, within 90 days of the date of this letter, to:  Privacy Office, Attn: FOIA Appeals, U.S. Department of Homeland Security, 2707 Martin Luther King Jr. Avenue, SE, Mail Stop 0655, Washington, D.C. 20528-0655, following the procedures outlined in the DHS FOIA regulations at 6 C.F.R. Part 5 § 5.5(e)(2).  Your envelope and letter should be marked "FOIA Appeal."  Copies of the FOIA and DHS FOIA regulations are available at www.dhs.gov/foia.

If you need any further assistance or would like to discuss any aspect of your request, please contact the analyst below

who processed your request and refer to 2025-HQFO-03131.  You may send an e-mail to foia@hq.dhs.gov, call 202-343-1743 or toll free 1-866-431-0486, or you may contact our FOIA Public Liaison in the same manner.  Additionally, you have a right to right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974.  You may contact OGIS as follows:  Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Provisions of FOIA allow DHS to charge for processing fees, up to $25, unless you seek a waiver of fees.  In this instance, because the cost is below the $25 minimum, there is no charge.

Regards,

DHS FOIA, Privacy Office
Department of Homeland Security
2707 Martin Luther King Jr. AVE SE
Mail Stop 0655
Washington, DC 20528-0655
E-mail: foia@hq.dhs.gov
Visit our FOIA website https://www.dhs.gov/foia



March 26, 2025

**VIA Electronic Delivery**

Department of Homeland Security Headquarters
Office of the Executive Secretary
MS 0525 Department of Homeland Security
2707 Martin Luther King Jr Ave SE
Washington, DC 20528-0525
Via online portal

**Re: Expedited Freedom of Information Act Request**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, Democracy Forward
Foundation  submits this request for records.

*Records Requested*
Democracy Forward Foundation ("DFF") requests that the your agency produce the following
within twenty (20) business days:

1. All text messages or messages on messaging platforms (such as Signal messages, X
   Direct messages, Slack, WhatsApp, Teams, GChat or Google Hangouts, etc.) sent and
   received by the DHS officials listed below that concern official business:
   Officials:
   a. Secretary Kristi Noem
   b. Deputy Secretary Troy Edgar
   c. Anyone serving as Chief of Staff to Secretary Noem

2. All text messages or messages on messaging platforms (such as Signal messages, X
   Direct messages, Slack, WhatsApp, Teams, GChat or Google Hangouts, etc.) sent and
   received by the DHS officials listed in Item 1 that include any of the following terms:
   Terms:
   I.    "Alien Enemies Act"
   II.   AEA
   III.  "Tren de Aragua"
   IV.   TdA
   V.    "Terrorism Confinement Center"

DF-DHS-25-0528

 VI. CECOT
 VII. Thugs
 VIII. Boasberg
 IX. "Court Order"

3. Records sufficient to identify the (1) group names (2) deletion timelines (3) channel participants for all Signal groups on any devices DHS officials listed in Item 1 use for official business.

A search for responsive records should include both government-issued and personal devices on both classified and unclassified systems.

This request seeks records from January 20, 2025, until the date of the search.

### *Request for Expedited Processing*

I certify to the best of my knowledge and belief that expedited processing of this request is required because there is a "compelling need" for the disclosure of the requested information.[1] DFF is an organization primarily engaged in "disseminating information to the public,"[2] as evidenced by the previous use of public records obtained by DFF in numerous news reports.[3]

---

[1] 5 U.S.C. § 552 (6)(E).

[2] 5 U.S.C. § 552 (6)(E)(v)(II) ("Compelling need" for the purpose of expedited processing mean "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.").

[3] *See*, *e.g.*, Alexander Nazaryan, *Why did right-wing troll Charles C. Johnson meet with Commerce Secretary Wilbur Ross?*, Yahoo News (May 14, 2019),
https://news.yahoo.com/why-did-rightwing-troll-charles-c-johnson-want-to-meet-with-commerce-secretary-wilbur-ross-090000636.html; Derek Kravitz and Jack Gillum, *"Happy to Do It": Emails Show Current FAA Chief Coordinated With Ex-Lobbyist Colleagues on Policy*, ProPublica (Mar. 27, 2019),
https://www.propublica.org/article/dan-elwell-current-faa-chief-coordinated-with-ex-lobbyist-colleagues-on-policy;
Hamid Aleaziz, *Emails Show US Border Officials Didn't Receive "Zero Tolerance" Guidance Until After the Policy Was Enacted*, Buzzfeed News (Feb. 28, 2019),
https://www.buzzfeednews.com/article/hamedaleaziz/zero-tolerance-policy-guidance-dhs-family-separation;
Jonathan Cohn and Jeffrey Young, *Emails Show Trump Administration Was Told Obamacare Ad Cuts Could Hurt Enrollment*, Huffpost (Dec. 17, 2018),
https://www.huffingtonpost.com/entry/trump-verma-obamacare-advertising-cut_us_5c115061e4b084b082ff8dba;
Madison Pauly, *When the Biggest Prison Company Complained About a California Sanctuary Law, ICE Listened*, Mother Jones (Dec. 7, 2018),
https://www.motherjones.com/politics/2018/12/geo-memo-private-prison-california-immigration/; Eliza Rellman,
*'Just answer the question and kill this story': In internal emails, Heather Nauert criticized Rex Tillerson's refusal to deny reports that he called Trump a 'moron,'* Business Insider (Nov. 2, 2018),
https://www.businessinsider.com/heather-nauert-rex-tillerson-trump-moron-2018-11; Rebecca Klein, *Lawsuit Accuses Betsy DeVos And Her Deputies Of Being Motivated By Sexism*, HuffPost (Oct. 31, 2018),
https://m.huffpost.com/us/entry/us_5bd9ff6ee4b01abe6a1ad4a9; Nick Penzenstadler, *A year after Vegas shooting, ATF emails reveal blame, alarm over bump stocks*, USA Today (Oct. 1, 2018),
https://www.usatoday.com/story/news/2018/10/01/year-after-vegas-atf-emails-reveal-blame-alarm-over-bump-stocks/1432137002/; Jessica Kwong, *Ivanka Trump was more than complicit in Obama equal pay rollback-she had a hand in it, watchdog alleges*, Newsweek (Aug. 29, 2018),

Further there is a clear "urgency to inform the public" of the Administration usage of Signal for detailed and confidential discussions as seen recently regarding pending military action, and the usage of auto-deletion for such discussions that may violate federal records laws.[4] In addition, there is clearly an "urgency to inform the public" regarding the Administration's usage of the "alien enemies" wartime law to deport individuals over alleged gang ties without the ability to challenge their removal.[5]

### Scope of Search

FOIA requires agencies to disclose information, with only limited exceptions for information that would harm an interest protected by a specific exemption or where disclosure is prohibited by law. 5 U.S.C. § 552(a)(8)(A). In the event that any of the requested documents cannot be disclosed in their entirety, we request that you release any material that can be reasonably segregated. *See* 5 U.S.C. § 552(b). Should any documents or portions of documents be  withheld, we further request that you state with specificity the description of the document to be withheld and the legal and factual grounds for withholding any documents or portions thereof in  an index, as required by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Should any document  include both disclosable and non-disclosable material that cannot reasonably be segregated, we request that you describe what proportion of the information in a document is non-disclosable and how that information is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S.  Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

If requested records are located in, or originated in, another agency, department, office,

https://www.newsweek.com/ivanka-trump-equal-pay-complicit-obama-1093833; Vera Bergengruen, *New Emails Show What Happens When The Pentagon Has To Scramble To Catch Up To Trump*, Buzzfeed News (July 25, 2018), https://www.buzzfeednews.com/article/verabergengruen/these-emails-show-what-happens-when-the-white-house-keeps; Erin Dooley, *Exclusive: Former for-profit college executive shaped Education Department policy that could benefit former employers: Documents*, ABC News (May 15, 2017), https://abcnews.go.com/US/exclusive-profit-college-executive-shaped-education-department-policy/story?id=55108981; Heidi Przybyla, *Notes, emails reveal Trump appointees' war to end HHS teen pregnancy program*, NBC News (Mar. 20, 2018), https://www.nbcnews.com/politics/politics-news/notes-emails-reveal-trump-appointees-war-end-hhs-teen-pregnancy-n857686; Dominic Holden, *Documents Show The Trump Administration Approved Bump Stocks Before It Opposed Them*, Buzzfeed News (Mar. 22, 2018), https://www.buzzfeednews.com/article/dominicholden/trump-administration-bump-stocks; Bernard Condon, *Trump Advisor Denies He Cheered End of Tunnel Funding Deal*, Associated Press (Feb. 13, 2018), *available at* https://www.usnews.com/news/business/articles/2018-02-13/trump-adviser-denies-he-cheered-end-of-tunnel-funding-deal; Celeste Katz, *Interior Department tapped wildfire preparedness funds for Ryan Zinke helicopter tour*, Newsweek (Dec. 29, 2017), https://www.newsweek.com/ryan-zinke-interior-department-helicopters-wildfires-757857.

[4] Jeffrey Goldberg, *"The Trump Administration Accidentally Texted Me Its War Plans,"* The Atlantic (Mar. 24, 2025), https://www.theatlantic.com/politics/archive/2025/03/trump-administration-accidentally-texted-me-its-war-plans/682151/?gift=kPTlqn0J1iP9IBZcsdI5IVJpB2t9BYyxpzU4sooa69M&utm_source=copy-link&utm_medium=social&utm_campaign=share.
[5] Madeline Halpert, *Judge: US treated Nazis better than Venezuelan migrants who were deported,"* BBC (Mar. 24, 2025), https://www.bbc.com/news/articles/cp3y03l1gvko.

installation or bureau, please refer this request or any relevant portion of this request to the appropriate entity.

To the extent that the records are readily reproducible in an electronic format, we would prefer to receive the records in that format. However, if certain records are not available in that format, we are willing to accept the best available copy of each such record.

Please respond to this request in writing within 20 working days as required under 5 U.S.C. § 552(a)(6)(A)(i). If all of the requested documents are not available within that time period, we request that you provide us with all requested documents or portions of documents that are available within that time period. If all relevant records are not produced within that time period, we are entitled to a waiver of fees for searching and duplicating records under 5 U.S.C. § 552(a)(4)(A)(viii)(I).

### Request for Fee Waiver

Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 39 C.F.R. § 265.9, DFF requests a waiver of all fees associated with processing records for this request. FOIA requires documents to be furnished to requesters at no fee or reduced fees "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A).

In determining whether a fee waiver is appropriate, courts consider whether a requester has a "demonstrated . . . ability to disseminate the requested information," *Cause of Action v. F.T.C.*, 799 F.3d 1108, 1116-17 (D.C. Cir. 2015), and whether the requester regularly disseminates records obtained through FOIA to "a reasonably broad audience of persons interested in the subject" of its work. *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814-15 (2d Cir. 1994). FOIA does not require a requester to describe exactly how it intends to disseminate the information requested, as that would require "pointless specificity"; all that is necessary is for a requester to adequately demonstrate its "ability to publicize disclosed information." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1314 (D.C. Cir. 2003). In evaluating a fee waiver request, courts consider how a requester actually communicates information collected through FOIA to the public, including press releases or a website where documents received are made available, *see id.*, or whether the requester has a history of "contacts with any major news[] companies" that suggest an ability to disseminate materials of interest through the press. *Larson v. C.I.A.*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (upholding a denial of a fee waiver to a requester who had failed to identify his relationships with newspaper companies that could disseminate documents).

The requested waiver is in the public interest because providing the copy of the information sought primarily benefits the general public. Democracy Forward has a demonstrated ability to disseminate information of public interest requested through freedom of information statutes, and based upon responses to this request may assist in publicizing records received to contribute to the public's understanding of Trump administration usage of Signal for detailed and confidential discussions as seen recently regarding pending military action,[6] as well as the Administration's usage of the "alien enemies" wartime law to deport individuals over alleged gang ties without the ability to challenge their removal. Indeed, records received by Democracy Forward have previously formed the basis of news reports.[7]

---

[6] Goldberg, *Id.*

[7] *See, e.g.,* Alexander Nazaryan, *Why did right-wing troll Charles C. Johnson meet with Commerce Secretary Wilbur Ross?*, Yahoo News (May 14, 2019), https://news.yahoo.com/why-did-rightwing-troll-charles-c-johnson-want-to-meet-with-commerce-secretary-wilbur-ross-090000636.html; Derek Kravitz and Jack Gillum, *"Happy to Do It": Emails Show Current FAA Chief Coordinated With Ex-Lobbyist Colleagues on Policy*, ProPublica (Mar. 27, 2019), https://www.propublica.org/article/dan-elwell-current-faa-chief-coordinated-with-ex-lobbyist-colleagues-on-policy; Hamid Aleaziz, *Emails Show US Border Officials Didn't Receive "Zero Tolerance" Guidance Until After the Policy Was Enacted*, Buzzfeed News (Feb. 28, 2019), https://www.buzzfeednews.com/article/hamedaleaziz/zero-tolerance-policy-guidance-dhs-family-separation; Jonathan Cohn and Jeffrey Young, *Emails Show Trump Administration Was Told Obamacare Ad Cuts Could Hurt Enrollment*, Huffpost (Dec. 17, 2018), https://www.huffingtonpost.com/entry/trump-verma-obamacare-advertising-cut_us_5c115061e4b084b082ff8dba; Madison Pauly, *When the Biggest Prison Company Complained About a California Sanctuary Law, ICE Listened*, Mother Jones (Dec. 7, 2018), https://www.motherjones.com/politics/2018/12/geo-memo-private-prison-california-immigration/; Eliza Rellman, *'Just answer the question and kill this story': In internal emails, Heather Nauert criticized Rex Tillerson's refusal to deny reports that he called Trump a 'moron,'* Business Insider (Nov. 2, 2018), https://www.businessinsider.com/heather-nauert-rex-tillerson-trump-moron-2018-11; Rebecca Klein, *Lawsuit Accuses Betsy DeVos And Her Deputies Of Being Motivated By Sexism*, HuffPost (Oct. 31, 2018), https://m.huffpost.com/us/entry/us_5bd9ff6ee4b01abe6a1ad4a9; Nick Penzenstadler, *A year after Vegas shooting, ATF emails reveal blame, alarm over bump stocks*, USA Today (Oct. 1, 2018), https://www.usatoday.com/story/news/2018/10/01/year-after-vegas-shooting-atf-emails-reveal-blame-alarm-over-bump-stocks/1432137002/; Jessica Kwong, *Ivanka Trump was more than complicit in Obama equal pay rollback-she had a hand in it, watchdog alleges*, Newsweek (Aug. 29, 2018), https://www.newsweek.com/ivanka-trump-equal-pay-complicit-obama-1093833; Vera Bergengruen, *New Emails Show What Happens When The Pentagon Has To Scramble To Catch Up To Trump*, Buzzfeed News (July 25, 2018), https://www.buzzfeednews.com/article/verabergengruen/these-emails-show-what-happens-when-the-white-house-keeps; Erin Dooley, *Exclusive: Former for-profit college executive shaped Education Department policy that could benefit former employers: Documents*, ABC News (May 15, 2017), https://abcnews.go.com/US/exclusive-profit-college-executive-shaped-education-department-policy/story?id=55108981; Heidi Przybyla, *Notes, emails reveal Trump appointees' war to end HHS teen pregnancy program*, NBC News (Mar. 20, 2018), https://www.nbcnews.com/politics/politics-news/notes-emails-reveal-trump-appointees-war-end-hhs-teen-pregnancy-n857686; Dominic Holden, *Documents Show The Trump Administration Approved Bump Stocks Before It Opposed Them*, Buzzfeed News (Mar. 22, 2018), https://www.buzzfeednews.com/article/dominicholden/trump-administration-bump-stocks; Bernard Condon, *Trump Advisor Denies He Cheered End of Tunnel Funding Deal*, Associated Press (Feb. 13, 2018), *available at* https://www.usnews.com/news/business/articles/2018-02-13/trump-adviser-denies-he-cheered-end-of-tunnel-funding-deal; Celeste Katz, *Interior Department tapped wildfire preparedness funds for Ryan Zinke helicopter tour*, Newsweek (Dec. 29, 2017), https://www.newsweek.com/ryan-zinke-interior-department-helicopters-wildfires-757857.

Democracy Forward is not filing this request to further any commercial interest, and any information obtained by Democracy Forward as a result of this request and disclosed will be disclosed at no cost.

If the request for a waiver is denied, we are willing to pay all reasonable fees incurred for searching and duplicating records in responding to this request, up to $50. If the costs of responding to this request should exceed that amount, please contact us before incurring costs exceeding that amount.

### Conclusion

If you need clarification as to the scope of the request, have any questions, or foresee any obstacles to releasing fully the requested records within 20 business days, please contact me as soon as possible at foia@democracyforward.org.

We appreciate your assistance and look forward to your prompt response.

Sincerely,

*/s/ Skye Perryman*
Skye Perryman
President & CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

DF-DHS-25-0528