**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DEMOCRACY FORWARD FOUNDATION,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE et al.,<br><br>*Defendants*. | Civil Action No. 1:25-cv-1535 (APM) |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRESERVATION ORDER**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................. 1

I.      Legal Background ............................................................................................................. 1

        A.      Freedom of Information Act .................................................................................. 1

        B.      Federal Records Act ............................................................................................... 2

        C.      Department of State's Recordkeeping Program .................................................... 3

II.     Factual Background ......................................................................................................... 4

LEGAL STANDARD ..................................................................................................................... 5

ARGUMENT .................................................................................................................................. 7

I.      Plaintiff Is Not Entitled to a Preservation Order Because the State Department Has Policies and Procedures in Place to Preserve Records in the Ordinary Course .............................................................................................................. 7

II.     Plaintiff Is Not Likely to Succeed on the Merits ............................................................. 9

III.    Plaintiff Does Not Face Imminent Irreparable Harm .................................................... 11

IV.    The Balance of Equities Does Not Favor a Preservation Order .................................... 14

CONCLUSION ............................................................................................................................. 15

## TABLE OF AUTHORITIES

**CASES**

*Abdullah v. Obama*,
  753 F.3d 193 (D.C. Cir. 2014) ................................................................................ 6

*\* Am. Oversight v. Hegseth*,
  Civ. No. 25-883-JEB, 2025 WL 1721995 (D.D.C. June 20, 2025) .................. 1, 8, 9, 13

*Am. Oversight v. Department of Government Efficiency*,
  No. 1:25-cv-00409-BAH, 2025 WL 993518 (D.D.C. Apr. 2, 2025) ........................ 7, 8

*Aviles-Wynkoop v. Neal*,
  978 F. Supp. 2d 15 (D.D.C. 2013) ...................................................................... 12

*Banks v. Booth*,
  459 F. Supp. 3d 143 (D.D.C. 2020) ...................................................................... 6

*Bracy v. Gramley*,
  520 U.S. 899 (1997) ........................................................................................... 10

*Cause of Action Inst. v. U.S. DOJ*,
  Civ. A. No. 18-1800 (APM), 2019 WL 12070403 (D.D.C. Apr. 25, 2019) ................ 6

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) ........................................................................... 11

*Citizens for Resp. & Ethics in Wash. v. FEC*,
  711 F.3d 180 (D.C. Cir. 2013) ......................................................................... 2, 3

*City of L.A. v. Lyons,*
  461 U.S. 95 (1983) ............................................................................................ 12

*\* Competitive Enter. Inst. v. Off. of Sci. & Tech. Policy*,
  Civ. A. No. 14-765 (GK), 2016 WL 10676292 (D.D.C. Dec. 12, 2016) ................ 6, 9

*Cornish v. Dudas*,
  540 F. Supp. 2d 61 (D.D.C. 2008) ...................................................................... 12

*CREW v. Off. of Admin.*,
  593 F. Supp. 2d 156 (D.D.C. 2009) ...................................................................... 7

*CREW v. U.S. DOGE*,
  769 F. Supp. 3d 8 (D.D.C. 2025) .......................................................................... 8

*CSL Plasma Inc. v. U.S. Customs & Border Prot.*,
  628 F. Supp. 3d 243 (D.D.C. 2022) ................................................................... 6, 7

*Cuomo v. U.S. Nuclear Regul. Comm'n*,
  772 F.2d 972 (D.C. Cir. 1985) ................................................................................. 7

*Davis v. Pension Benefit Guar. Corp.*,
  571 F.3d 1288 (D.C. Cir. 2009) .......................................................................... 6, 7

*Democracy Forward Found. v. OMB*
  ---F. Supp. 3d---, 2025 WL 1078778 (D.D.C. Apr. 9, 2025) ....................................... 14

*Diversified Mortg. Inv. v. U.S. Life Title Ins. Co. of N.Y.*,
  544 F.2d 571 (2d Cir. 1976) ................................................................................. 7

*Dorfmann v. Boozer*,
  414 F.2d 1168 (D.C. Cir. 1969) ............................................................................ 7

*Dorsey v. District of Columbia*,
  711 F. Supp. 2d 133 (D.D.C. 2010) ..................................................................... 11

*Glossip v. Gross*,
  576 U.S. 863 (2015) .......................................................................................... 12

*Humble Oil & Refin. Co. v. Harang*,
  262 F. Supp. 39 (E.D. La. 1966) .......................................................................... 6

*Judicial Watch, Inc. v. U.S. DOJ*,
  Civ. A. No. 18-154 (RBW), 2018 WL 11457399 (D.D.C. Nov. 13, 2018) .................... 6

*League of Women Voters of the U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) ................................................................................ 11

*Madden v. Wyeth*,
  No. 03-cv-0167-R, 2003 WL 21443404 (N.D. Tex. Apr. 16, 2003) .............................. 6

*Nken v. Holder*,
  556 U.S. 418 (2009) ...................................................................................... 7, 14

*O.K. v. Bush*,
  Civ. A. No. 04-1136 (JDB), 2005 WL 8177541 (D.D.C. Oct. 27, 2005) ...................... 5

*Open Am. v. Watergate Special Prosecution Force*,
  547 F.2d 605 (D.C. Cir. 1976) ............................................................................ 2

*Pratt v. Webster*,
  673 F.2d 408 (D.C. Cir. 1982) ............................................................................ 1

*Protect Democracy Project, Inc. v. U.S. DOJ*,
  498 F. Supp. 3d 132 (D.D.C. 2020) ............................................................... 13, 14

*Pub. Citizen v. U.S. Dep't of State*,
   276 F.3d 634 (D.C. Cir. 2002) .................................................................................. 12

*Sampson v. Murray*,
   415 U.S. 61 (1974) .................................................................................................... 11

*Selchow & Righter Co. v. W. Printing & Lithographing Co.*,
   112 F.2d 430 (7th Cir. 1940) ...................................................................................... 7

*Sherley v. Sebelius*,
   644 F.3d 388 (D.C. Cir. 2011) .................................................................................... 6

*United States ex rel. Staggers v. Medtronic, Inc.*,
   Civ. A. No. 15-392 (TSC-RMM), 2022 WL 4078969 (D.D.C. Sept. 6, 2022) .............. 6

*United States v. Armstrong*,
   517 U.S. 456 (1996) .................................................................................................. 10

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
   559 F.2d 841 (D.C. Cir. 1977) .................................................................................... 9

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ...................................................................................................... 11

*Wis. Gas Co. v. FERC*,
   758 F.2d 669 (D.C. Cir. 1985) .............................................................................. 11, 12

**STATUTES**

5 U.S.C. § 552 ................................................................................................................ 2, 5

44 U.S.C. § 2904 ................................................................................................................ 3

44 U.S.C. § 2906 ................................................................................................................ 3

44 U.S.C. § 3101 ................................................................................................................ 3

44 U.S.C. § 3301 ................................................................................................................ 2

**OTHER AUTHORITIES**

5 FAM 435, https://fam.state.gov/fam/05fam/05fam0430.html ................................ *passim*

## **INTRODUCTION**

Plaintiff Democracy Forward Foundation (DFF) brought suit on May 14, 2025, under the Freedom of Information Act (FOIA) against Defendants U.S. Department of Justice (DOJ), U.S. Department of Homeland Security (DHS), and U.S. Department of State (State). Compl. at 1, ECF No. 1. Nearly two months later, Plaintiff filed the instant motion for a preservation order with respect to one of its FOIA requests to State. Pl.'s Mot. for a Preservation Order at 1, ECF No. 11. Plaintiff, however, fails to meet its burden to show that a preservation order is necessary. To the contrary, State already has in place a recordkeeping program for text messages and communications sent using third-party messaging applications, including Signal. Indeed, another court in this jurisdiction recently found that the plaintiff in a separate case under the Federal Records Act (FRA) was not likely to succeed on the merits with respect to a claim challenging the adequacy of State's recordkeeping program. *Am. Oversight v. Hegseth*, Civ. No. 25-883-JEB (D.D.C. June 20, 2025), 2025 WL 1721995 at *7. Moreover, State's anticipated imminent completion of the FOIA search would further obviate any basis for a preservation order in this case. *See* Decl. of Mallory D. Rogoff ¶ 9 ("Rogoff Decl."). Finally, as of July 21, 2025, State installed a platform on Secretary of State Marco Rubio's mobile device which automatically captures and enables permanent archiving of the kinds of electronic messages at issue in this case going forward. Rogoff Decl. ¶¶ 5–6. As a result, a preservation order is not warranted under these circumstances. The Court therefore should deny the motion.

## BACKGROUND

**I.    Legal Background**

   **A.    Freedom of Information Act**

FOIA provides a "statutory right of public access to documents and records" held by federal government agencies. *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982). FOIA requires that an agency determine within 20 business days whether to comply with a request and to notify immediately the person making the request of such determination and of the reasons for the determination. 5 U.S.C. § 552(a)(6)(A)(i); *see also Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013) ("CREW"). If the agency fails to comply with the statutory time requirements, the person or entity making the request may file suit in federal court. 5 U.S.C. § 552(a)(6)(C)(i). The court then may either order the production of any agency records improperly withheld or, upon a finding of "exceptional circumstances" and "due diligence" by the agency, retain jurisdiction and allow the agency additional time to complete its review of the requested records. *Id.*

Agencies typically process FOIA requests for records in the order received. *See, e.g.*, *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 614-16 (D.C. Cir. 1976).

   **B.    Federal Records Act**

The FRA governs records that are:

> made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them.

44 U.S.C. § 3301(a)(1)(A). Under the FRA regime, agencies must "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information

2

necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." *Id.* § 3101. In this endeavor, agencies are subject to the overarching authority of the National Archives and Records Administration (NARA), which is responsible for providing guidance and assistance to agencies in carrying out their recordkeeping obligations and, in limited circumstances, conducting inspections of an agency's records or records management practices. *Id.* §§ 2904, 2906.

### C. Department of State's Recordkeeping Program

The Foreign Affairs Manual (FAM), which sets forth State Department policies for Department staff, was recently updated effective July 11, 2025, to clarify the recordkeeping protocol for electronic messaging. *See* https://fam.state.gov/fam/05fam/05fam0430.html (last accessed July 22, 2025); Rogoff Decl. ¶ 3. Specifically, the relevant section provides that:

> All Department personnel who use non-Government electronic messaging (eMessaging) applications or platforms on any device to conduct official Department business must ensure that any messages containing federal records are properly captured, exported, and transferred to a Department-approved system, such as a state.gov email address, in compliance with federal records management requirements.

5 FAM 435(a). In addition, "[t]he use of 'ephemeral' or self-destructing/disappearing message features with the eMessaging application is strictly prohibited," and any such "features must be disabled or remain deactivated to maintain the integrity, availability, and retention of the official records." *Id.* at 435(c)(1). "Messages containing official Department business from senders who have enabled disappearing messages must be preserved immediately before they disappear, such as by transferring them to a state.gov email account." *Id.* at 435(c)(2). The Manual further provides that:

> When using non-Government eMessaging applications or platforms for official Department business, each Department user included in the group message must capture and retain the records as follows:

> (1) Transfer the message and related administrative content (the list of participants included in the message) from the application or platform to the individual's state.gov email account at the time of transmission or within 20 calendar days of creation or receipt. It may be appropriate to routinely transfer ongoing chats periodically to meet this requirement.

*Id.* at 435(d). State also provides "[d]etailed instructions" to "all personnel on how to properly capture, export, and transfer such messages," Rogoff Decl. ¶ 3, and "maintains a robust records-management training and briefing program which regularly communicates those obligations to all personnel, including and especially, Capstone officials (i.e., senior-level policy-making officials)," *id.* ¶ 4.

As of July 21, 2025, State "also installed LeapXpert on certain senior officials' government-furnished devices, including Secretary Rubio's government-issued mobile phone." *Id.* ¶ 5. LeapXpert is "used to capture and enable archiving of all communications in identified third-party applications, including Signal." *Id.* "In the Department's use of the platform, LeapXpert has been configured to automatically archive data from designated senior officials' government-issued devices into eRecords, the Department's NARA-approved, official system of record and archive for electronic communications." *Id.* ¶ 6.

## II.    Factual Background

According to allegations in the Complaint, Plaintiff is a nonprofit that has submitted FOIA requests to the Defendants. Compl. ¶¶ 3-6. Plaintiff submitted the subject FOIA request on March 26, 2025. *Id.* ¶ 38. The request seeks "[a]ll text messages or messages on messaging platforms (such as Signal messages, X Direct messages, Slack, WhatsApp, Teams, GChat or Google Hangouts, etc.) sent and received by" Secretary Marco Rubio or Counselor and Chief of Staff Mike Needham and containing any of various specified search terms. *Id.* As alleged in the Complaint, the "request sought records from January 20, 2025, through the date of the search." *Id.* ¶ 39. On April 2, 2025, State acknowledged the request and assigned it a tracking number: F-2025-13426.

4

*Id.* ¶ 40. The Complaint contains a single claim for relief, Count I, which alleges that Defendants have "fail[ed] to respond to Plaintiff's requests . . . within the statutorily mandated time period" and thus "have violated their duties under 5 U.S.C. § 552," which they allege to include "conduct[ing] a reasonable search for responsive records," "tak[ing] reasonable steps to release all nonexempt information," and, conversely, "not withhold[ing] responsive records." *Id.* ¶ 44.

On June 18, 2025, Defendants answered the Complaint. ECF No. 7. The parties subsequently filed a joint status report on July 7, indicating that Defendants' searches, including State's search in response to F-2025-13426, are ongoing. ECF No. 10. Days later, on July 11, Plaintiff filed the instant Motion for a Preservation Order. ECF No. 11.

Specifically, Plaintiff requests an order requiring that State: (1) "as soon as practicable and within 1 day of this order" instruct Secretary of State Rubio of the obligation to preserve any records "potentially responsive to FOIA request F-2025-13426;" (2) "within 7 days of this order, coordinate with Secretary Rubio to collect and copy into a separate government record keeping system all messages and other records potentially responsive to FOIA request F-2025-13426;" and (3) "through a competent records official, . . . submit a declaration to this Court within 7 days of this order detailing steps taken to comply with this order . . . and informing the Court of the volume of potentially responsive records collected and preserved." [Proposed] Order at 1-2, ECF No. 11-3 ("Proposed Order").

## **LEGAL STANDARD**

Although "[t]here is a split of authority over the precise standard that a party seeking a preservation order must satisfy," *O.K. v. Bush*, Civ. A. No. 04-1136 (JDB), 2005 WL 8177541, at *1 (D.D.C. Oct. 27, 2005), the weight of authority in this Circuit holds that such motions are "subject to the same analytical framework as a motion for injunctive relief." *Competitive Enter.*

5

*Inst. v. Off. Of Sci. & Tech. Policy*, Civ. A. No. 14-765 (GK), 2016 WL 10676292, at *2 (D.D.C. Dec. 12, 2016) ("*CEI*"); *Judicial Watch, Inc. v. U.S. DOJ*, Civ. A. No. 18-154 (RBW), 2018 WL 11457399 (D.D.C. Nov. 13, 2018); *see also Cause of Action Inst. v. U.S. DOJ*, Civ. A. No. 18-1800 (APM), 2019 WL 12070403, at *1 (D.D.C. Apr. 25, 2019) (applying injunctive relief standard); *Madden v. Wyeth*, No. 03-cv-0167-R, 2003 WL 21443404, at *1 (N.D. Tex. Apr. 16, 2003) ("A motion to preserve evidence is an injunctive remedy and should issue only upon an adequate showing that equitable relief is warranted." (citing *Humble Oil & Refin. Co. v. Harang*, 262 F. Supp. 39, 42 (E.D. La. 1966))). "Under the injunctive relief framework, in determining whether a preservation order is warranted, the Court 'must consider (1) the likelihood that the party seeking the [preservation order] will prevail on the merits'; (2) 'the likelihood that the moving party will be irreparably harmed'; (3) 'the prospect that others will be harmed'; and (4) the public interest." *United States ex rel. Staggers v. Medtronic, Inc.*, Civ. A. No. 15-392 (TSC-RMM), 2022 WL 4078969, at *6 (D.D.C. Sept. 6, 2022) (quoting *CEI*, 2016 WL 10676292, at *2). It is the movant's burden to show that "all four factors, taken together, weigh in favor of the injunction." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009)).

Courts in this Circuit have typically applied a "sliding-scale" approach in analyzing these four factors, whereby a particularly strong showing in one factor could outweigh weakness in another. *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011). "It is unclear if this approach has survived the Supreme Court's decision in *Winter*, however." *CSL Plasma Inc. v. U.S. Customs & Border Prot.*, 628 F. Supp. 3d 243, 253 (D.D.C. 2022) (citing *Banks v. Booth*, 459 F. Supp. 3d 143, 149-50 (D.D.C. 2020). Nonetheless, the movant still bears a burden to show that "all four factors, taken together, weigh in favor of the injunction." *Abdullah*, 753 F.3d at 197 (quoting

6

*Davis*, 571 F.3d at 1292). "Whatever the status of the sliding scale, the court 'cannot dispense with the required showing of' either success on the merits or irreparable harm 'simply because there is a strong likelihood of the other.'" *CSL Plasma*, 628 F. Supp. 3d at 253 (quoting *Nken v. Holder*, 556 U.S. 418, 438 (2009) (Kennedy, J. concurring)).

A preliminary injunction generally "should not work to give a party essentially the full relief [it] seeks on the merits," *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) (citing *Selchow & Righter Co. v. W. Printing & Lithographing Co.*, 112 F.2d 430, 431 (7th Cir. 1940)); *see also Diversified Mortg. Inv. v. U.S. Life Title Ins. Co. of N.Y.*, 544 F.2d 571, 576 (2d Cir. 1976) (collecting cases). Moreover, this equitable power "should not be exercised unless it is manifest that the normal legal avenues are inadequate [and] that there is a compelling need to give the plaintiff the relief he seeks." *Dorfmann*, 414 F.2d at 1174; *CREW v. Off. of Admin.*, 593 F. Supp. 2d 156, 159 (D.D.C. 2009) ("It is 'the movant's obligation to justify the court's exercise of such an extraordinary remedy.'") (quoting *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985)).

## ARGUMENT

### I. Plaintiff Is Not Entitled to a Preservation Order Because the State Department Has Policies and Procedures in Place to Preserve Records in the Ordinary Course

The Court should deny the motion for a preservation order because such extraordinary relief is not warranted here.

This case is facially distinct from *American Oversight v. Department of Government Efficiency*, No. 1:25-cv-00409-BAH, 2025 WL 993518 (D.D.C. Apr. 2, 2025), on which Plaintiff relies. In that case, the court issued a preservation order after detailing her rationale for finding extraordinary circumstances warranting such relief. *Id.* at *1-2. Specifically, the court in that case found that agency "personnel 'may not fully appreciate their obligations to preserve federal

7

records,' under either the FOIA or the Presidential Records Act, as 'many of [the] staffers are reported to have joined the federal government only recently and . . . may not be steeped in its document retention policies[.]'" *Id.* at *1 (quoting *CREW v. U.S. DOGE*, 769 F. Supp. 3d 8, 31 (D.D.C. 2025)). The Court went on to express that "[a]dditional concerns arise due to the fact that [the agency] 'operat[es] with unusual secrecy'" and "refused to stipulate to its preservation obligations of documents that are at the heart of this litigation." *Id.* at *2. The court referred to another case finding that the agency's "lack of assurances of compliance with the Federal Records Act was evidence that a preservation order was necessary[.]" *Id.* (discussing *CREW*, 769 F. Supp. 3d at 31).

The court's rationale for issuing a preservation order in *American Oversight v. DOGE* is inapposite here. Whereas the court in that case expressed concern about the agency's recordkeeping program under the Federal Records Act, State, by contrast, has implemented a recordkeeping program that addresses the preservation of electronic messages — a policy which State updated as of July 11 with respect to preservation requirements for electronic messaging, in particular. *See* 5 FAM 435(a); Rogoff Decl. ¶ 3. In fact, another court in this district recently found that a challenge to the adequacy of State's recordkeeping protocol under the Federal Records Act was not likely to succeed on the merits, even before State's adoption of these updates. *Am. Oversight v. Hegseth*, ---F. Supp. 3d---, 2025 WL 1721995, at *7 (D.D.C. June 20, 2025). State, moreover, anticipates that by July 31, 2025, it will have completed the search with respect to FOIA request number F-2025-13426, at which point any search results would be preserved in an agency recordkeeping system. Rogoff Decl. ¶ 9. Accordingly, the circumstances of this case do not support issuing a preservation order.

The same result follows from application of the preliminary injunction factors, which also weigh against issuing a preservation order in this case.

## II.     Plaintiff Is Not Likely to Succeed on the Merits

Plaintiff is wrong to argue that this case presents a "serious legal question . . . sufficient to satisfy the 'likelihood-of-success' inquiry." Pl.'s Mem. in Supp. of Mot. for Preservation Order at 12, ECF No. 11-1 ("Pl.'s Mem."). To the contrary, in light of State's adequate recordkeeping program, including regular training for all personnel on compliance with its federal recordkeeping policies, Plaintiff fails to raise "questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *CEI*, 2016 WL 10676292, at *2 (quoting *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977)).

State has implemented recordkeeping policies that another court in this district in a separate case recently found a plaintiff would be unlikely to succeed in challenging under the FRA. *Am. Oversight*, 2025 WL 1721995, at *5 (challenge under the FRA to the adequacy of State and other agencies' recordkeeping policies for electronic messages was not likely to succeed on the merits). Moreover, as of July 11, 2025, State updated the applicable policy specifically with respect to preservation of electronic messaging. *See* https://fam.state.gov/fam/05fam/05fam0430.html. Thus, State's policy, 5 FAM 435(a), requires that:

> [a]ll Department personnel who use non-Government electronic messaging (eMessaging) applications or platforms on any device to conduct official Department business must ensure that any messages containing federal records are properly captured, exported, and transferred to a Department-approved system, such as a state.gov email address, in compliance with federal records management requirements.

*See also* Rogoff Decl. ¶ 3. State provides "[d]etailed instructions" to "all personnel on how to properly capture, export, and transfer such messages." *Id.* Additionally, State "maintains a robust

9

records-management training and briefing program which regularly communicates those obligations to all personnel," and "Secretary Rubio and his staff . . . have received this training." *Id.* ¶ 4. State's recordkeeping program therefore demonstrates that a preservation order is not warranted. *See, e.g.*, *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) (courts ordinarily should "presume that public officials have 'properly discharged their duties.'") (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)).

Plaintiff complains that "State still has not collected records potentially responsive to this request" and argues that "[c]onsequently," a preservation order is necessary to address the perceived "risk of deletion." Pl.'s Mem. at 12. But State anticipates completing the search by July 31, at which point any potentially responsive records would be stored in an agency recordkeeping system. Rogoff Decl. ¶ 9. In addition, State recently reported, in the context of FRA litigation in another court in this district, that it is "not aware of any Signal chats of agency head Defendants [in that case] containing federal records at risk of impending deletion." *See* Def.'s Mem. in Support of Def.'s Mot. to Dismiss at 7, *Am. Oversight v. Hegseth*, No. 25-cv-883-JEB (D.D.C.) ECF No. 39-1 (citation omitted); *see also* Rogoff Decl. ¶ 8 ("Additionally, the Office of the Secretary has confirmed that Secretary Rubio does not use the auto-deletion functions in third party messaging applications when sending communications that may include federal records.").

Finally, although, as Plaintiff concedes, the completion of the search would cut off the "presumptively reasonable timeframe" for a response to FOIA request number F-2025-13426, Pl.'s Mem. at 15, it is nonetheless worth noting that State also is implementing a new platform "to automatically archive data from designated senior officials' government-issued devices" going forward. Rogoff Decl. ¶ 6. To that end, as of July 21, 2025, State has "installed LeapXpert on certain senior officials' government-furnished devices, including Secretary Rubio's government-

10

issued mobile phone." *Id.* ¶ 5. As explained in the attached Rogoff Declaration, LeapXpert "capture[s] and enable[s] archiving of all communications in identified third-party applications, including Signal," regardless of whether the sender activates a timed autodeletion feature in the application. *Id.* LeapXpert "captures text, files, images, emojis, stickers, and metadata across all identified third-party applications, and keeps a unified record of conversations." *Id.* "LeapXpert has been configured to automatically archive data from designated senior officials' government-issued devices into eRecords, the Department's NARA-approved, official system of record and archive for electronic communications." *Id.* ¶ 6. And "[o]nce archived in eRecords, all of Secretary Rubio's records are maintained on a permanent basis." *Id.* Plaintiff therefore fails to raise any serious legal question with respect to State's recordkeeping.

Accordingly, Plaintiff has not shown that it is likely to succeed on the merits.

### III. Plaintiff Does Not Face Imminent Irreparable Harm

"The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). "A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). To constitute irreparable injury, the harm must be "'certain and great,' 'actual and not theoretical,' and so 'imminen[t] that there is a clear and present need for equitable relief to prevent irreparable harm.'" *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 7-8 (D.C. Cir. 2016) (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297). As the movant, Plaintiff has the burden "to make a clear showing 'that irreparable injury is *likely* in the absence of an injunction,'" not just that it is theoretically possible. *Dorsey v. District of Columbia*, 711 F.

Supp. 2d 133, 135 (D.D.C. 2010) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). To meet this burden, the Plaintiff "cannot simply make 'broad conclusory statements' about the existence of harm." *Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 21 (D.D.C. 2013). Rather, Plaintiff must "submit[] . . . competent evidence into the record . . . that would permit the Court to assess whether [it], in fact, faces irreparable harm . . . if an injunction is not issued." *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008) (internal quotation omitted).

Plaintiff fails to establish that, "[w]ithout issuance of a preservation order in short order, DFF will be irreparably harmed as the records it seeks are demonstrably at risk of loss or destruction." Pl.'s Mem. at 15; *cf. Glossip v. Gross*, 576 U.S. 863, 876 (2015) (it is the plaintiff's burden to show that its alleged harm is irreparable and would likely occur absent an injunction). Plaintiff's attempt to show an imminent risk of irreparable harm is too vague and speculative to meet this burden. *City of L.A. v. Lyons,* 461 U.S. 95, 109 (1983); *Wis. Gas Co.*, 758 F.2d at 674 (per curiam) ("unsubstantiated and speculative" harm cannot constitute "irreparable harm" sufficient to justify injunctive relief). In fact, as of July 21, 2025, State has already implemented a technological solution which, going forward, enables the automatic and permanent preservation of the kinds of electronic messages at issue. Rogoff Decl. ¶¶ 5–6. Moreover, this motion will have been fully briefed for fewer than seven days before State's anticipated completion of its search by July 31. *Id.* ¶ 9; *see also* Minute Order (July 16, 2025) (requiring that Plaintiff shall file its reply by July 25). Plaintiff argues that the date of the search generally constitutes a reasonable cutoff date for responding to a FOIA request. Pl.'s Mem. at 15 (citing *Pub. Citizen v. U.S. Dep't of State*, 276 F.3d 634, 644 (D.C. Cir. 2002)). But this only shows that a preservation order would be unnecessary here, as State anticipates that it will have completed the search by the time this Court

12

could issue the requested order. *Cf.* Rogoff Decl. ¶ 9; Proposed Order at 1 (proposing an order that would require State to collect and preserve potentially responsive records within seven days).

Further, State has already implemented adequate policies and procedures for the preservation of electronic messages. As noted, State recently updated its recordkeeping policy specifically with respect to the preservation of electronic messages and prohibiting the use of autodelete functions in messaging apps. 5 FAM 435(a). And State has already provided training to Secretary Rubio and his staff with respect to State's recordkeeping program. Rogoff Decl. ¶ 4; *cf.* Proposed Order at 1 (proposing that State immediately notify Secretary Rubio of preservation requirement). Indeed, as noted above, another court in this district found that an FRA claim challenging the adequacy of the earlier version of the FAM would be unlikely to succeed. *Am. Oversight*, 2025 WL 1721995, at *5. In addition, State recently reported in that same case that it is "not aware of any Signal chats of agency head Defendants [in that case] containing federal records at risk of impending deletion." *See* Def.'s Mem. in Support of Def.'s Mot. to Dismiss at 7, *American Oversight v. Hegseth*, No. 25-cv-883-JEB (D.D.C.) (citation omitted); *see also* Rogoff Decl. ¶ 8.

Plaintiff attempts to cast doubt by arguing that "State has not complied with DFF's repeated requests that it collect and preserve potentially responsive Signal and similar records." Pl.'s Mem. at 16. But Plaintiff's request is tantamount to a demand that State immediately complete its FOIA search for responsive records. Plaintiff thus conflates the FOIA search with preservation obligations under the FRA and, on that faulty premise, further assumes that any responsive records would not be preserved without the completion of the search. Notwithstanding this fatal flaw in Plaintiff's reasoning, State's anticipated completion of the search by July 31 resolves any potential issue. *See* Rogoff Decl. ¶ 9; *see also, e.g.*, *Protect Democracy Project, Inc. v. U.S. DOJ*, 498 F.

Supp. 3d 132, 135 (D.D.C. 2020) (noting that "[a]gencies typically process FOIA requests for records in the order in which the agency receives them"). Accordingly, Plaintiff has failed to establish that it is "likely to be irreparably denied access to records responsive to its request without a preservation order." Pl.'s Mem. at 16.

## IV.     The Balance of Equities Does Not Favor a Preservation Order

The remaining factors required for preliminary injunctive relief — balancing of the harm to the opposing party and the public interest — also weigh against emergency relief here. These factors merge when the Government is the opposing party. *Nken*, 556 U.S. at 435. The balance of equities weighs against Plaintiff's request for an order that would require State to complete the search immediately, in advance of July 31, to the detriment of other FOIA requesters in the queue. Courts in this Circuit have recognized that "[p]reliminary injunctions in the FOIA context are extraordinarily rare" for this very reason. *Democracy Forward Found. v. OMB*, ---F. Supp. 3d---, 2025 WL 1078778, at *1 (D.D.C. Apr. 9, 2025) ("Democracy Forward has not established that the Court should move its FOIA requests to the front of the line — ahead of requests submitted by other concerned citizens also seeking transparency from the federal government.").

Plaintiff argues that no harm would result to State from issuing a preservation order, which would "merely require[] taking 'images' or 'screenshots' of the existing Signal messages and preserving them in a government record keeping system." Pl.'s Mem. at 17. But Plaintiff's proposed order would impose a heavier burden than that. Plaintiff's proposed order would require State to complete the search immediately, which could necessitate setting aside or otherwise delaying other pending FOIA requests. In that respect, such an order could unjustly work to the detriment of other, similarly situated FOIA requesters. And, as noted above, such an order would

14

be unwarranted both because State anticipates completing the search by July 31 and because State already has an adequate recordkeeping program for the preservation of electronic messages.

Thus, the balance of equities weighs against issuing a preservation order.

## CONCLUSION

For the foregoing reasons, Defendant State respectfully requests that the Court deny the Plaintiff's Motion for a Protective Order.

July 22, 2025                                   Respectfully submitted,

                                                BRETT A. SHUMATE
                                                Assistant Attorney General
                                                Civil Division

                                                ELIZABETH J. SHAPIRO
                                                Deputy Director
                                                Federal Programs Branch

                                                 /s/ Amber Richer
                                                AMBER RICHER (CA Bar No. 253918)
                                                Trial Attorney, U.S. Department of Justice
                                                Civil Division, Federal Programs Branch
                                                1100 L Street, NW
                                                Washington, DC 20005
                                                Tel.: (202) 514-3489
                                                E-mail: amber.richer@usdoj.gov

                                                *Counsel for Defendants*