**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DEMOCRACY FORWARD FOUNDATION,

*Plaintiff*,

vs.

U.S. DEPARTMENT OF JUSTICE, et al.,

*Defendants*.

Case No. 25-cv-1535-APM

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO REINSTATE HEARING, OR IN THE ALTERNATIVE, FOR LIMITED DISCOVERY**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 1

LEGAL STANDARD ................................................................................................... 5

ARGUMENT ............................................................................................................ 6

I. The Court Should Reinstate the September 3 Hearing to Receive Information from a State Official. ............................................................................................. 6

II. In the Alternative, The Court Should Grant Plaintiff Limited Discovery. ..................... 8

CONCLUSION ......................................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

*Am. Immigr. Laws Ass'n v. EOIR*,
830 F.3d 667 (D.C. Cir. 2016) ........ 12

*Competitive Enter. Inst. v. OSTP*,
185 F. Supp. 3d 26 (D.D.C. 2016) ........ 5, 8, 9, 13

*CREW v. DOJ*,
846 F.3d 1235 (D.C. Cir. 2017) ........ 6

*Damus v. Nielsen*,
328 F.R.D. 1 (D.D.C. 2018) ........ 5, 6, 8, 13

*Payne Enters. v. United States*,
837 F.2d 486 (D.C. Cir. 1988) ........ 5

*Renegotiation Bd. v. Bannercraft Clothing Co.*,
415 U.S. 1 (1974) ........ 5

## OTHER AUTHORITIES

Jeffrey Goldberg, *The Trump Administration Accidentally Texted Me Its War Plan*s, Atlantic (Mar. 24, 2025), https://www.theatlantic.com/politics/archive/2025/03/trump-administration-accidentally-texted-me-its-war-plans/682151/ [https://perma.cc/4AQQ-FRMW] ........ 1

Michael Scherer et al., *Hegseth, Rubio, and Caine Had an Auto-Deleting Signal Chat*, The Atlantic (June 29, 2026), https://www.theatlantic.com/national-security/2026/06/trump-administration-signal-chat-marco-rubio/687735/ [https://perma.cc/8UCS-AH8Q] ........ 1

Michael Scherer et al., *Marco Rubio's Disappearing Signal Chat*, The Atlantic (July 14, 2026), https://www.theatlantic.com/national-security/2026/07/marco-rubio-signal-state-department/687906/ [https://perma.cc/77SJ-7L6S] ........ 1

*Navigate to Settings*, Signal Support, https://support.signal.org/hc/en-us/articles/360009091591-Navigate-to-Settings [https://perma.cc/8XVH-WJTP] (last visited Aug. 11, 2026) ........ 4

*Set and Manage Disappearing Messages, Signal Support*,
https://support.signal.org/hc/en-us/articles/360007320771-Set-and-manage-disappearing-messages [http://perma.cc/H8Z4-AUFR] (last visited Aug. 11, 2026) ........................................................................................................................ 7

## INTRODUCTION

"Secretary Rubio does not use the auto-deletion functions in third party messaging applications when sending communications that may include federal records." Multiple State Department officials declared this to the Court under penalty of perjury. But when State officials made these statements, State had already collected records responsive to Plaintiff Democracy Forward Foundation ("DFF")'s Freedom of Information Act ("FOIA") requests showing Secretary Rubio was a member of multiple Signal chats with autodelete enabled.

These records—finally released to DFF via Court-ordered production on June 22, 2026—raise serious questions about State's compliance with the Court's preservation order, good faith processing of Plaintiff's FOIA request, and candor in the course of this litigation. State either cannot, or will not, explain itself. And the possibility that top Administration officials are still using Signal in a manner that violates federal records laws remains a topic of intense public interest.[1] Plaintiff, therefore, respectfully requests the Court reinstate its previously scheduled hearing to receive testimony from a State Official, or in the alternative, grant Plaintiff limited discovery to shed light on these serious questions.

## BACKGROUND

On March 24, 2025, *The Atlantic* reported that numerous high-ranking government officials, including Secretary Rubio, had used Signal with autodelete enabled to conduct official business.[2] Two days later, DFF submitted a FOIA request seeking, broadly speaking: (1) Secretary Rubio and then Chief of Staff Mike Needham's Signal messages containing terms likely to concern

---

[1] *See* Michael Scherer et al., *Hegseth, Rubio, and Caine Had an Auto-Deleting Signal Chat*, The Atlantic (June 29, 2026), https://perma.cc/8UCS-AH8Q; *see also* Michael Scherer et al., *Marco Rubio's Disappearing Signal Chat*, The Atlantic (July 14, 2026), https://perma.cc/77SJ-7L6S.

[2] *See* Jeffrey Goldberg, *The Trump Administration Accidentally Texted Me Its War Plan*s, The Atlantic (Mar. 24, 2025), https://perma.cc/4AQQ-FRMW.

the Administration's policy of rendering individuals to El Salvador without due process; and (2) records showing the group names, participants, and deletion timelines for any Signal chats Secretary Rubio and Mr. Needham used for official business.[3] DFF later filed suit to compel State's production of these records.[4] When State ignored multiple letters and requests from DFF citing *The Atlantic*'s reporting and urging State to take prompt action to collect and preserve responsive Signal records, DFF moved for a preservation order.[5]

State, at first, vigorously opposed that motion.[6] In so opposing, a State Official declared "under penalty of perjury" on July 22, 2025, "Secretary Rubio does not use the auto-deletion functions in third party messaging applications when sending communications that may include federal records."[7] State further declared that one day prior, on July 21, 2025, the agency had installed a platform (LeapXpert), on Secretary Rubio's "government-issued device" to archive his Signal messages "going forward."[8] DFF replied that State's representations begged more questions than they answered[9] and that its late actions provided little, if any, relief.[10]

On August 7, 2025, State reported to the Court it had completed its search and collection of Signal messages responsive to DFF's FOIA request.[11] The Court held a hearing on DFF's Preservation Motion on August 25, 2025. At that hearing, Counsel for State could not say whether

[3] *See* Compl. ¶ 38, Dkt. No. 1.
[4] *See generally* Compl.
[5] *See generally* Pl.'s Mot. for a Preservation Order, Dkt. No. 11.
[6] *See* Def.'s Opp'n to Pl.'s Preservation Mot., Dkt. No. 16 ("Def.'s Opp'n").
[7] *See* Declaration of Mallory D. Rogoff ¶ 8, Dkt. No. 16-1 ("Rogoff Decl.").
[8] *See* Def.'s Opp'n at 1 (citing Rogoff Decl. ¶¶ 5-6).
[9] *See* Pl.'s Reply in Supp. of Pl.'s Mot. for Preservation Order ("Reply") at 4 n.2, Dkt. No. 17 (contrasting State's representation that Secretary Rubio does not use autodelete with *The Atlantic*'s reporting of his prior confirmed participation in a Signal chat subject to autodelete).
[10] *See id.* at 8-9 (questioning the preservation of Signal records prior to July 21 and on personal devices because LeapXpert only archives Signal messages on official devices "going forward").
[11] *See* Aug. 7, 2025 Joint Status Report ("JSR") ¶ 4(b), Dkt. No. 18.

any records had been deleted.[12] The Court adjourned the hearing for State to "gather" that information.[13] When, at the second hearing, Counsel for State still had no information,[14] the Court scheduled a third hearing for September 3, 2025 ("the September 3 hearing"), for "somebody from State [to] show up here who can answer these questions on the record and maybe even under oath."[15]

On the eve of the third hearing, State agreed to enter a stipulated preservation order in exchange for Plaintiff's agreement to hold the hearing in abeyance pending Plaintiff's review of a declaration required by that order. The Parties jointly advised the Court "the hearing currently set for September 3, 2025, to receive information from a State official regarding State's Signal records preservation, should be held in abeyance pending Defendant State's submission of a declaration providing specific information, as required in the stipulated order, and Plaintiff's review thereof."[16] The Court entered the order, including a requirement to submit a declaration informing the Court "of State's efforts to determine whether any records potentially responsive to Plaintiff's FOIA request have been deleted or lost."[17]

State filed two additional declarations pursuant to the order.[18] In both, State Officials declared "under penalty of perjury" that "Secretary Rubio does not use the auto-deletion functions in third party messaging applications when sending communications that may include federal records."[19] When Plaintiff asked the Court to order State to supplement these declarations by

[12] Aug. 25, 2025 Hr'g Tr. 6:13-17, Dkt. No. 20.
[13] *Id.* 21:7-17.
[14] *See* Aug. 28, 2025 Hr'g Tr. 7:1-2, Dkt. No. 21.
[15] *Id.* 7:24-25, 8:1-2.
[16] *See* Joint Mot. to Enter Stipulated Preservation Order ¶ 3, Dkt. No. 22 ("Joint Stipulation Mot.").
[17] *See* Order, Dkt. No. 23 (hereinafter "preservation order").
[18] *See* Decl. of Susan C. Weetman ¶ 5, Dkt. No. 24-1; *see also* Decl. of Timothy J. Kootz ¶ 4, Dkt. No. 26-1.
[19] *Id.*

producing any deletion timeline information apparent within the collected Signal records, State opposed that requested relief as "speculat[ive]."[20]

But then, after months of unexplained delay, multiple missed production deadlines, and eventual Court-ordered production, on June 22, 2026, State finally produced records showing that Secretary Rubio was a member of multiple Signal chats with "Disappearing Messages" (autodelete) enabled. The records consist of undated screenshots of the "chat settings"[21] of 16 Signal threads. As one example, State produced the below screenshot (annotations by DFF) showing Secretary Rubio was a member of a chat named "SS/APNSA,SD,CJCS" with messages set to autodelete in "8 hours":




Autodelete has been turned on for this Signal thread. The text messages in this chat will automatically delete in 8 hours.

[22]

Given the apparent inconsistency between State's production and its prior representations, DFF promptly wrote to State raising concerns about the agency's candor to the Court and

---

[20] *See* Oct. 31, 2025 JSR ¶ 7, Dkt. No. 27.

[21] *See Navigate to Settings*, Signal Support, https://perma.cc/8XVH-WJTP (last visited Aug. 11, 2026) (explaining "chat settings" are accessed by tapping the contact name or header of a chat).

[22] *See* Vickery Decl. Ex.1 (hereinafter "June 22 production") at Bates no. State-006-DFF; *see also id.* at Bates no. State-017-DFF (showing Secretary Rubio was a member of a chat with a redacted name with messages set to autodelete in "1 week"); *id.* at Bates no. State-022-DFF (showing a third chat with "TB," which may belong to Secretary Rubio or then Chief of Staff Needham, based on the parameters of DFF's FOIA request, with messages set to autodelete in "1 week").

preservation of records, and requesting prompt explanations and action.[23] State responded by merely quoting the very declarations now called into question, making noncommittal statements about its search and preservation efforts, and otherwise asserting DFF's questions were immaterial.

DFF, accordingly, now asks the Court to reinstate the September 3 hearing to receive information from a State official, or in the alternative, for limited discovery allowing Plaintiff to notice a deposition of no more than two hours to a State official with personal knowledge of the agency's preservation, collection, and processing of records responsive to Plaintiff's FOIA request, including communications with the Secretary's office concerning compliance with the preservation order. The purpose of either the hearing or deposition would be to determine whether records have been preserved, whether State has made misrepresentations in this litigation and its declarations purporting to comply with the Court's preservation order, and whether State is processing Plaintiff's FOIA request in good faith.

## LEGAL STANDARD

"FOIA imposes no limits on courts' equitable powers in enforcing its terms." *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). Congress, moreover, did not "limit the inherent powers of an equity court" in FOIA cases. *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 20 (1974). Courts have the "inherent power to enforce" their orders. *Damus v. Nielsen*, 328 F.R.D. 1, 3-4 (D.D.C. 2018). "[I]t is clear that appropriate discovery should be granted where significant questions regarding noncompliance with a court order have been raised." *Id.* (collecting cases) (cleaned up). In addition, discovery is permitted "when a plaintiff raises a sufficient question as to the agency's good faith in processing documents in response to a FOIA request." *Competitive Enter. Inst. v. OSTP*, 185 F. Supp. 3d 26, 27 (D.D.C. 2016) (Mehta, J.) (collecting cases).

---

[23] *See* Vickery Decl. Ex.2 (DFF's July 6, 2026 letter to State).

## ARGUMENT

State's June 22 production of Signal records—with multiple chats showing autodelete enabled and lacking plainly responsive information—raises serious questions about State's compliance with the Court's preservation order, the veracity of statements made "under penalty of perjury" by State officials, and whether State is processing DFF's requests in good faith. Whether as an exercise of the Court's "broad equitable authority" to manage FOIA cases, *CREW v. DOJ*, 846 F.3d 1235, 1241-42 (D.C. Cir. 2017), or pursuant to its "inherent power to enforce" orders, *Damus*, 328 F.R.D. at 3-4, Plaintiff requests the Court reinstate the previously scheduled September 3 hearing to receive testimony from a State official, or alternatively, grant Plaintiff limited discovery to notice a deposition to a State official.

### I. The Court Should Reinstate the September 3 Hearing to Receive Information from a State Official.

It is unclear (and deeply concerning) how State can reconcile its repeated declarations to this Court that "Secretary Rubio does not use the auto-deletion functions in third party messaging applications when sending communications that may include federal records," *see* Rogoff Decl. ¶ 8; Weetman Decl. ¶ 5; Kootz Decl. ¶ 4, with State's June 22 production showing that Secretary Rubio was a member of multiple Signal group chats with other high-ranking government officials with autodelete enabled at the time those declarations were made, *see* June 22 Production at Bates nos. State-006-DFF, State-017-DFF. For example, the Weetman and Kootz Declarations were made pursuant to the Court's preservation order on September 9 and October 8, 2025, respectively, and were filed *after* State had finished its collection of "screenshots" showing autodelete enabled in multiple of Secretary Rubio's Signal chats. *See* Aug. 7, 2025 JSR ¶ 4b (reporting State's "search and collection for all Signal messages is complete"); *see also* Aug. 28, 2025 Hr'g Tr. 4:10-11 (informing the Court that Signal records were being preserved as "screenshots").

State's engagement with DFF on this issue to date has been inadequate, making involvement by the Court necessary. In response to DFF's request for a written explanation of the apparent contradiction,[24] State merely pointed DFF to quotes from the very same declarations and stated that any member of a Signal chat can enable disappearing messages. But the issue is whether State is acting in good faith to ensure records are preserved, namely whether the Secretary participates in Signal chats with disappearing messages enabled, not whether he personally enables the function. State repeatedly relied on Secretary Rubio's purported non-use of autodelete to assure this Court that records were not at risk of deletion, all the while having already collected records showing that someone had in fact enabled disappearing messages that would result in deletion of Secretary Rubio's messages all the same.[25] Reporting also raises doubts as to the assertion that Secretary Rubio does not himself enable autodelete.[26]

This is not State's only misleading statement. At the second hearing on Plaintiff's Preservation Motion on August 28, 2025, Counsel for State informed the Court that State "has not taken steps to assess whether any records might have been subject to auto-deletion." Aug. 28, 2025 Hr'g Tr. 7:1-2. As with the Weetman and Kootz Declarations, this hearing—scheduled precisely for the purpose of informing the Court whether records had been subject to deletion, *see id.* 5:22-25, 6:1-14—occurred *after* State had completed its search and collection of screenshots showing

---

[24] As well as responses to DFF's additional questions, discussed *infra*, about the good faith and completeness of State's processing and preservation efforts raised by the June 22 production. *See* Vickery Decl. Ex.2.

[25] Any participant in a Signal chat can enable disappearing messages, and once someone does, the setting applies to all parties of a conversation and any new messaging after the timer for deletion has been set or modified. *See Set and Manage Disappearing Messages, Signal Support*, http://perma.cc/H8Z4-AUFR (last visited Aug. 11, 2026).

[26] On July 14, 2026, *The Atlantic* reported that around two months after State filed the Weetman Declaration, and one month after it filed the Kootz Declaration, "[Secretary] Rubio changed the settings in a Signal chat about administration matters with other senior officials so that the messages would automatically delete after a set amount of time." *See* Scherer et al., *Marco Rubio's Disappearing Signal Chat, supra* note 1.

that Secretary Rubio was a member of multiple chats with autodelete enabled. *See* Aug. 7, 2025 JSR ¶ 4b; Aug. 28, 2025 Hr'g Tr. 4:10-11. Later, after Plaintiff asked the Court to require State to produce any deletion timeline information apparent within the collected Signal records to supplement the agency's self-declared limited "technical means" to assess records loss, *see* Oct. 31, 2025 JSR ¶ 18 (quoting Kootz Decl. ¶ 4), State suggested that Plaintiff "speculates" deletion timelines may appear in the records in opposing that relief, *id.* ¶ 7. Here too, State had already collected Signal records showing deletion timelines with autodelete enabled.

DFF only agreed to hold the September 3 hearing in abeyance *pending* "State's submission of a declaration" and "Plaintiff's review thereof." Joint Stipulation Mot. ¶ 3. Where the candor of the resulting declarations (and other representations in the course of litigation) have now been called into serious question by records already collected at the time of those statements, but only recently released to Plaintiff, additional inquiry is needed to assess State's candor and good faith compliance with the Court's preservation order. DFF respectfully requests the Court reinstate the September 3 hearing for a knowledgeable State official to answer these questions.

## II. In the Alternative, The Court Should Grant Plaintiff Limited Discovery.

To the extent the Court does not itself wish to manage State's testimony, DFF alternatively requests the Court grant Plaintiff limited discovery to notice a deposition to a State official with personal knowledge of the agency's compliance with the Court's preservation order and processing of Plaintiff's FOIA request. As discussed above, State's June 22 production raises serious questions about the agency's candor in complying with the Court's preservation order that merit discovery. *See Damus*, 328 F.R.D. at 3-4. State's June 22 production, moreover, raises serious questions about State's good faith processing of Plaintiff's FOIA request that merit prompt discovery. *See Competitive Enters. Inst.*, 185 F. Supp. 3d at 27 (requiring only "a sufficient

question" as to agency good faith in processing). It took State over ten months to process 16 Signal records, and when it finally produced them—pursuant only to Court order—the records called into serious question State's veracity. But those records are also demonstrably incomplete. A complete production would reveal more information about senior government officials' use of autodelete—including whether Secretary Rubio himself enabled it—and other issues relevant to records loss. Because State has failed in conferral to directly answer basic questions about the June 22 production's apparent incompleteness, Plaintiff questions whether State purposefully made a selective production to limit the release of information that would further disprove its representations or embarrass the Administration. These questions are more than "sufficient" to merit discovery into State's good faith processing. *Id.*

State's "chat setting" screenshots produced on June 22, 2026, show the deletion timeline and channel participants for a chat at only the moment the screenshot was taken (i.e., at the time of the record's collection), but that information is demonstrably incomplete. For example, State's screenshot for the "Houthi PC small group" chat shows that at the moment of collection, "disappearing messages" were "off" and the chat had 18 members:



This showing differs from *The Atlantic*'s screenshot of the very same chat's settings, which shows in March 2025, "disappearing messages" were set to "1 week" and the chat had 19 members:




This comparison demonstrates that even where State's produced screenshot shows disappearing messages as "off," or a certain composition of members, that does not preclude that same chat having autodelete enabled, or having different members, at a period prior to State's collection of records. DFF's FOIA request was not limited to the deletion timeline or channel participants "at the moment of collection," but instead sought "deletion timelines" and "channel participants" from January 20, 2025, through the date of the search, which includes records showing where a chat was set to varying timelines, or was composed of varying members, at different points in time. *See* Compl. ¶ 38. State did not produce records in the form that would show that responsive information and, to date, has not confirmed that it has collected and preserved such records.

The complete deletion timeline and channel participant information DFF seeks can only be found in the body of the Signal chats and may shed additional light on State's candor and preservation of records in this matter. For example, Signal chats show changes to deletion timelines as enabled and adjusted. Consider the following (created by DFF):




The body of the above Signal chat displays: (1) the date disappearing messages settings are enabled and/or adjusted; (2) by whom; and (3) the length of the deletion timeline selected. A complete production would, for example, reveal if, contrary to State's representations, Secretary Rubio himself enabled autodelete during the period of the search. As for channel participants, the body of Signal chats display the addition or removal of chat participants and their timing:



Of note, State's June 22 production appears to show multiple devices associated with Secretary Rubio in several of the group chats, reigniting questions about the use of personal phones to conduct agency business and the obvious questions about records preservation and loss that attend such use.[27] The timing of the addition of Secretary Rubio's various devices to the chats would reveal, for example, if a second (official) device was added to his chats shortly before State's collection of responsive records via screenshots, and is otherwise relevant to assessing State's representations about the sufficiency of its preservation efforts.[28]

Again, any such deletion timeline and channel participant information imbedded in the Signal chats is responsive to DFF's FOIA request. To date, despite Plaintiff's repeated requests, State has not confirmed that it has collected and preserved this information. Instead, State responded in double negative that it "never indicated that it did not collect such information," but that the records it produced provide "the most fulsome" set of responsive information. The demonstrated incompleteness of State's June 22 production undercuts State's latter assertion, and FOIA "does not provide for withholding responsive but non-exempt records." *Am. Immigr. Laws Ass'n v. EOIR*, 830 F.3d 667, 677 (D.C. Cir. 2016).[29] State's cherry-picking of responsive records begs many questions: Has State actually preserved all responsive deletion timeline and channel

[27] For example, in several of the "chat setting" screenshots, there are cases where "S - You" (likely S for Secretary) and "MR" (likely MR for Marco Rubio) are both members in a chat. *See, e.g.*, June 22 Production at Bates nos. State-004-DFF, State-005-DFF; State-017-DFF, State-018-DFF; State-019-DFF; State-021-DFF.

[28] *Compare* Rogoff Decl. ¶¶ 5-6 and Kootz Decl. ¶ 6 (discussing the installation of LeapXpert on Secretary Rubio's government phone), *with* Reply at 4 n.2 (pointing out that LeapXpert only archives Signal messages on official devices after July 21, 2025).

[29] More than a month after Plaintiff raised its concerns with State's June 22 production, and only on the eve of filing this Motion, State represented that it is willing to make a supplemental production. But State did not confirm it has already collected the missing records, and State expressly stated it could offer no timeline for response. As detailed above, State's prior processing of the 16 (demonstrably incomplete) Signal records released on June 22 involved numerous unexplained failures to meet its own stated production deadlines, and State ultimately only produced those records under court order.

participant records in compliance with this Court's preservation order? Did State make a selective production of deletion timeline information to avoid completely contradicting the agency's multiple declarations by revealing that Secretary Rubio has in fact enabled autodelete timelines? Or to otherwise avoid revealing more extensive use of autodelete and destruction of agency records by senior government officials? And did State make a selective production of channel participant information to shield extensive use of Signal on personal devices and potential attendant loss of records?

Taken together, it appears State either did not comply with the Court's preservation order to collect and preserve all responsive records, or State purposefully made a selective production that calls into question the good faith processing of Plaintiff's FOIA request. Either scenario would warrant discovery. *See Damus*, 328 F.R.D. at 3-4 (granting discovery into compliance with court order); *Competitive Enter. Inst.*, 185 F. Supp. 3d at 27 (granting discovery into good faith processing of FOIA request).[30] Although Plaintiff's questions are serious, the proposed discovery is narrow: it seeks information regarding only Defendant State's compliance with the Court's preservation order, good faith processing of DFF's requests vis-à-vis the preservation of records, attendant loss of responsive records, and candor in the course of this litigation.

**CONCLUSION**

For the reasons stated above, Plaintiff respectfully requests the Court either reinstate the previously scheduled hearing to receive testimony from a State Official, or in the alternative, grant Plaintiff limited discovery.

---

[30] State's last-minute agreement to make a supplemental production required by FOIA is not alone sufficient to resolve these serious questions or the questions of agency candor raised in Section I.

Dated: August 12, 2026

Respectfully submitted,

/s/ *Amy C. Vickery*

Amy C. Vickery
(admitted pro hac vice)*
Daniel A. McGrath
(D.C. Bar No. 1531723)
Robin F. Thurston
(D.C. Bar No. 7268942)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
avickery@democracyforward.org
dmcgrath@democracyforward.org
rthurston@democracyforward.org

* *Not admitted to practice law in the District of Columbia; practicing under the supervision of Democracy Forward lawyers who are members of the DC Bar.*

*Counsel for Plaintiff*