**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEMOCRACY FORWARD FOUNDATION,<br>*Plaintiff*,<br>v.<br>U.S. DEPARTMENT OF JUSTICE, et al.,<br>*Defendants*. | Case No. 25-cv-1535-APM |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REINSTATE HEARING, OR IN THE ALTERNATIVE, FOR LIMITED DISCOVERY**

# TABLE OF CONTENTS


INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 1

LEGAL STANDARD ........ 3

ARGUMENT ........ 5

I. Plaintiff Prematurely Challenges State's Response While It Continues Processing Other Potentially Responsive Records ........ 5

II. Plaintiff's Motion Fails to Overcome the Presumption Of Good Faith. ........ 11

CONCLUSION ........ 16

# TABLE OF AUTHORITIES

**Cases**

*Baker & Hostetler LLP v. U.S. Dep't of Com.*,
473 F.3d 312 (D.C. Cir. 2006) ... 6

*Beltranena v. Clinton*,
770 F. Supp. 2d 175 (D.D.C. 2011) ... 4, 11

*Bigwood v. U.S. Dep't of Def.*,
132 F. Supp. 3d 124 (D.D.C. 2015) ... 6

*Brayton v. Off. of the U.S. Trade Representative*,
641 F.3d 521 (D.C. Cir. 2011) ... 5

*Cause of Action Inst. v. OMB*,
10 F.4th 849 (D.C. Cir. 2021) ... 11

*Cause of Action Inst. v. OMB*,
Civ. A. No. 18-1508 (RBW), 2019 WL 6052369 (D.D.C. Nov. 15, 2019) ... 12

*Cole v. Rochford*,
285 F. Supp. 3d 73 (D.D.C. 2018) ... 4

*Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*,
Civ. A. No. 14-765 (GK), 2016 WL 10676292 (D.D.C. Dec. 12, 2016) ... 13

*Competitive Enterprise Institute v. Office of Science & Technology Policy*,
185 F. Supp. 3d 26 (D.D.C. 2016) ... 8, 9

*Fischer v. DOJ*,
723 F. Supp. 2d 104 (D.D.C. 2010) ... 15

*Fla. Immigrant Advoc. Ctr. v. Nat'l Sec. Agency*,
380 F. Supp. 2d 1332 (S.D. Fla. 2005) ... 13

*Freedom Watch, Inc. v. Nat'l Sec. Agency*,
220 F. Supp. 3d 40 (D.D.C. 2016) ... 15

*Gilliam v. DOJ*,
128 F. Supp. 3d 134 (D.D.C. 2015) ... 5, 6

*Grand Cent. P'ship, Inc. v. Cuomo*,
166 F.3d 473 (2d Cir. 1999) ... 15

*In re Clinton*,
973 F.3d 106 (D.C. Cir. 2020) ... 5

*Iturralde v. Comptroller of Currency,*
315 F.3d 311 (D.C. Cir. 2003) ........ 8

*Jarvik v. CIA*,
741 F. Supp. 2d 106 (D.D.C. 2010) ........ 11

*Johnson v. Exec. Off. for U.S. Att'ys*,
310 F.3d 771 (D.C. Cir. 2002) ........ 8

*Jud. Watch, Inc. v. DOJ,*
185 F. Supp. 2d 54 (D.D.C. 2002) ........ 5

*Justice v. IRS*,
798 F. Supp. 2d 43 (D.D.C. 2011), *aff'd*, 485 F. App'x 439 (D.C. Cir. 2012) ........ 4

*Lane v. Dep't of Interior*,
523 F.3d 1128 (9th Cir. 2008) ........ 5, 6

*Meeropol v. Meese*,
790 F.2d 942 (D.C. Cir. 1986) ........ 4

*Murphy v. FBI*,
490 F. Supp. 1134 (D.D.C. 1980) ........ 4

*Nat'l Archives & Recs. Admin. v. Favish*,
541 U.S. 157 (2004) ........ 15

*Ocasio v. DOJ*,
67 F. Supp. 3d 438 (D.D.C. 2014) ........ 14

*Oglesby v. U.S. Dep't of Army*,
920 F.2d 57 (D.C. Cir. 1990) ........ 7

*Perry v. Block*,
684 F.2d 121 (D.C. Cir. 1982) ........ 7

*PETA v. USDA*,
918 F.3d 151 (D.C. Cir. 2019) ........ 11, 15

*Reich v. U.S. Dep't of Energy*,
784 F. Supp. 2d 15 (D. Mass. 2011) ........ 12

*SafeCard Servs., Inc. v. SEC*,
926 F.2d 1197 (D.C. Cir. 1991) ........ 11

*Schrecker v. DOJ*,
217 F. Supp. 2d 29 (D.D.C. 2002), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003) ........ 4, 12

*Schrecker v. DOJ*,
349 F.3d 657 (D.C. Cir. 2003) ........................................ 8

*Taylor v. Babbitt*,
673 F. Supp. 2d 20 (D.D.C. 2009) ........................................ 4, 5

*Thomas v. Dep't of Health & Hum. Servs.*,
587 F. Supp. 2d 114 (D.D.C. 2008) ........................................ 16

*Weisberg v. DOJ*,
745 F.2d 1476 (D.C. Cir. 1984) ........................................ 8

*Wheeler v. CIA*,
271 F. Supp. 2d 132 (D.D.C. 2003) ........................................ 4

*Wilbur v. CIA*,
355 F.3d 675 (D.C. Cir. 2004) ........................................ 8

*Wilson v. U.S. Dep't of Transp.*,
No. 10-5295, 2010 WL 5479580 (D.C. Cir. Dec. 30, 2010) ........................................ 12

**Statutes**

5 U.S.C. § 552 ........................................ 1

## INTRODUCTION

Plaintiff Democracy Forward Foundation ("DFF") improperly seeks to reinstate a previously scheduled hearing or, in the alternative, initiate discovery against Defendant U.S. Department of State ("State") despite a lack of evidence demonstrating bad faith. State continues to process its response to the FOIA requests at issue in Plaintiff's Complaint. Plaintiff seeks such extraordinary relief by contending that what amounts to a premature challenge to State's response instead raises a matter of compliance with the Stipulated Preservation Order. *See* Mem. of Law in Supp. of Pl.'s Mot. to Reinstate Hr'g, or in the Alternative, for Limited Disc. ("Mem.") at 6, ECF No. 37-1. Plaintiff's motion should be denied because it (1) raises an untimely challenge to one subset of State's productions in this case while it continues to process records potentially responsive to other requests in Plaintiff's Complaint and (2) fails to demonstrate genuine issues of compliance with the Stipulated Preservation Order.

## FACTUAL BACKGROUND

On May 14, 2025, Plaintiff commenced an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Compl. ¶¶ 3-6, ECF No. 1. The FOIA requests at issue, submitted to the three defendant agencies, generally seek records related to the invocation of the Alien Enemies Act and the detention of individuals in El Salvador, as well as the text and Signal messages of certain high-ranking government officials. *See* Compl. ¶¶ 17, 27, 34, 38. For instance, Plaintiff requested from State "[a]ll text messages or messages on messaging platforms (such as Signal messages, X Direct messages, Slack, WhatsApp, Teams, GChat or Google Hangouts, etc.) sent and received by" Secretary Marco Rubio or Counselor and Chief of Staff Mike Needham and containing any of various specified search terms. *Id.* ¶ 38. At issue now is Part (2) of that request, which specifically seeks "[r]ecords sufficient to identify the (1) group names (2) deletion timelines

(3) channel participants for all Signal groups on any devices DOS officials listed in Item 1 use for official business." *Id.*

On July 11, 2025, Plaintiff filed a Motion for a Preservation Order. ECF No. 11. Following briefing and hearings on the motion, including a Declaration from State's Agency Records Officer Mallory D. Rogoff, ECF No. 16-1, the parties reached agreement and filed a Joint Motion for Entry of a Stipulated Preservation Order that would resolve the Plaintiff's motion. ECF No. 22. Accordingly, on September 2, 2025, the Court adopted the proposal and entered the Stipulated Preservation Order. ECF No. 23 ("Preservation Order"). This Order required State to send a preservation notice to U.S. Secretary of State Marco Rubio directing him to preserve his text messages and signal records. *Id.* The Stipulated Preservation Order further required State to submit a declaration detailing the steps taken to preserve all records potentially responsive to Plaintiff's FOIA request from government-issued and personal devices, provide an estimate of the volume of responsive records collected and preserved, and inform the Court of its efforts to determine whether any potentially responsive records were deleted or lost since the FOIA request was submitted, among other responsibilities. *Id.* The Stipulated Preservation Order denied Plaintiff's Motion for a Preservation Order, ECF No. 11, without prejudice and ordered that the previously scheduled hearing on the motion be held in abeyance "pending State's submission of the declaration required." Preservation Order at 2.

Seven days later, on September 9, 2025, State submitted the Declaration of Susan C. Weetman. ECF No. 24 ("Weetman Decl."). In this Declaration, State asserted that it "has searched for and provided screenshots of the Secretary's Signal messages on both Department-issued or personal devices that could contain information subject to the FOIA from January 20, 2025 to July 15, 2025." *Id.* ¶ 6. It also asserted that "images of Signal chats in the possession of the Office of

the Secretary related to this litigation have been captured and will be preserved." *Id.* ¶ 5. It further stated that it "is not aware of any Signal records of the Secretary responsive to this litigation that were lost to auto-deletion since the initiation of the relevant FOIA request in this case on March 26, 2025." *Id.*

Plaintiff took issue with the Weetman Declaration, arguing that it did not adequately describe "State's efforts to determine whether any records potentially responsive to DFF's FOIA request have been deleted or lost" and that it did not provide sufficient assurance that a preservation notice was sent to Secretary Rubio. Joint Status Report (Sep. 23, 2025) at 4-5, ECF No. 25 (citation omitted). In response, State submitted a supplemental declaration from Timothy J. Kootz on October 10, 2025. ECF No. 26-1 ("Kootz Decl."). In this Declaration, State clarified that "prior to July 21, 2025, [it] had no technical means to confirm whether Signal messages on an employee's official communication device had previously been automatically deleted within the Signal application" but that it had confirmed that images of relevant Signal chats "in the possession of the Office of the Secretary" have been captured and will be preserved. *Id.* ¶¶ 4-5.

In the meantime, the parties continued to file joint status reports approximately every thirty days, updating the Court on Defendants' processing of the various requests. As relevant here, State responded to Part 2 of Plaintiff's request on June 22, 2026. *See* Joint Status Report (June 23, 2026) at 3, ECF No. 35. Plaintiff sent a letter on July 6, 2026, challenging State's response. Joint Status Report (July 23, 2026) at 3-4, ECF No. 36. State responded to Plaintiff's follow-up on July 29, 2026. *Id.* The parties continued to meet and confer about this issue until Plaintiff filed the present motion on August 12, 2026. Pl.'s Mot. to Reinstate Hr'g, or in the Alternative, for Limited Disc. ("Mot."), ECF No. 37.

## LEGAL STANDARD

"A district court has 'broad discretion' in denying discovery in FOIA cases." *Cole v. Rochford*, 285 F. Supp. 3d 73, 77 (D.D.C. 2018) (quoting *Beltranena v. Clinton*, 770 F. Supp. 2d 175, 187 (D.D.C. 2011)). Discovery in FOIA is a rare exception and not the rule. *Justice v. IRS*, 798 F. Supp. 2d 43, 47 (D.D.C. 2011) (noting that "discovery is disfavored" in FOIA actions), *aff'd*, 485 F. App'x 439 (D.C. Cir. 2012); *Wheeler v. CIA*, 271 F. Supp. 2d 132, 139 (D.D.C. 2003) ("Discovery is generally unavailable in FOIA actions."). Discovery generally is not available "where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains. *Schrecker v. DOJ*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003). Moreover, agency declarations are afforded a presumption of good faith. *Meeropol v. Meese*, 790 F.2d 942, 952 (D.C. Cir. 1986).

"Because an agency usually submits these affidavits in support of its summary judgment motion, courts generally do not allow discovery in FOIA actions until after the government has moved for summary judgment." *Cole*, 285 F. Supp. 3d at 77. Discovery prior to summary judgment is generally premature and allowed only in unusual cases. *Taylor v. Babbitt*, 673 F. Supp. 2d 20, 23 (D.D.C. 2009) ("[I]n the exceptional case in which a court permits discovery in a FOIA action, such discovery should only occur after the government has moved for summary judgment."); *Murphy v. FBI*, 490 F. Supp. 1134, 1136 (D.D.C. 1980) ("Whether the instant case warrants discovery is a question of fact that can only be determined after the defendants file their dispositive motion and accompanying affidavits."). Moreover, a challenge to the agency's declarations is more appropriately addressed in the context of an opposition to a motion for summary judgment. *Cole*, 285 F. Supp. 3d at 78. "Even if an agency's affidavits regarding its search are deficient, courts generally do not grant discovery but instead direct the

agency to supplement its affidavits." *Taylor*, 673 F. Supp. 2d at 22 (citing *Jud. Watch, Inc. v. DOJ,* 185 F. Supp. 2d 54, 65 (D.D.C. 2002)).

Unsubstantiated claims that an agency has acted in bad faith are not sufficient to warrant discovery. *In re Clinton*, 973 F.3d 106, 114 (D.C. Cir. 2020) ("The mere suspicion of bad faith on the part of the government cannot be used as a dragnet to authorize voluminous discovery that is irrelevant to the remaining issues in a case.").

## ARGUMENT

### I. Plaintiff Prematurely Challenges State's Response While It Continues Processing Other Potentially Responsive Records.

Plaintiff's motion challenges the sufficiency of State's FOIA processing, even though State is still in the midst of responding to other requests at issue in the litigation brought by Plaintiff. Plaintiff's motion therefore is improper and premature. *Taylor*, 673 F. Supp. 2d at 22; *Lane v. Dep't of Interior*, 523 F.3d 1128, 1134-35 (9th Cir. 2008) (holding that district court's "delay of discovery" with respect to plaintiff's FOIA claim until after summary judgment "was certainly within its discretion").

The adequacy of an agency's FOIA processing is typically determined at summary judgment, after the agency has completed its response. *Gilliam v. DOJ*, 128 F. Supp. 3d 134, 138 (D.D.C. 2015) ("Most FOIA cases are appropriately resolved on motions for summary judgment." (citing *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011))). Here, however, State has not completed its response to all requests at issue in the litigation as brought by Plaintiff. This Court therefore should deny Plaintiff's premature challenge to the adequacy of State's FOIA processing while that processing remains ongoing. *See, e.g.*, *Lane v. Dep't of Interior*, 523 F.3d 1128, 1134-35 (9th Cir. 2008) (holding that district court's "delay of

discovery" with respect to plaintiff's FOIA claim until after summary judgment "was certainly within its discretion").

Indeed, Plaintiff's motion essentially challenges the adequacy of State's search, which it contends should have resulted in the production of additional documents. But such arguments are more appropriately addressed at summary judgment, when "[a]n agency may establish the adequacy of its search by submitting reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 318 (D.C. Cir. 2006). Plaintiff attempts to short-circuit that ordinary process by characterizing their challenge as a matter of compliance with the preservation order. Mem. at 13. This effort fails because Plaintiff has not presented evidence suggesting State failed to take the steps described in its declarations filed pursuant to the Stipulated Preservation Order, but rather that State's June 22 production was "incomplete" and "selective." As explained further below, the Stipulated Preservation Order is prospective in nature, and there is no evidence whatsoever to suggest that State has not complied in full with the obligations to which it committed. The Court should see through this artful attempt and deny the motion. If Plaintiff wishes to challenge the adequacy of State's response, it must wait for State to complete its responses and raise the argument at summary judgment. *Gilliam*, 128 F. Supp. 3d at 138.

Moreover, although the adequacy of a search cannot be challenged at this premature stage, nothing in the record suggests that the Court should be concerned about State's processing of Plaintiff's requests. State has undertaken substantial efforts to identify, preserve, and process potentially responsive records, as reflected in its submitted declarations. At the appropriate stage in this litigation, State may support the adequacy of its search through "'reasonably detailed' affidavits or declarations that describe the search performed." *Bigwood v. U.S. Dep't of Def.*, 132

F. Supp. 3d 124, 135 (D.D.C. 2015) (citation omitted); *see also Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982) ("[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice.") There is no reason to depart from that ordinary process here.

The record to date confirms that State has taken substantial steps to identify and preserve potentially responsive records. As State carefully detailed in its declarations filed pursuant to the Stipulated Preservation Order, it issued a litigation hold to the Office of the Secretary on August 6, 2025, emphasized that employees should ensure potentially relevant records are not destroyed, and warned of criminal penalties or sanctions in such event. Weetman Decl. ¶ 4. It then searched for and provided screenshots of the Secretary's Signal messages on both Department-issued or personal devices that could contain relevant information from January 20, 2025 to July 15, 2025. *Id.* ¶ 6. State also made clear that, prior to July 21, 2025, it had no technical means to confirm whether Signal messages on an employee's official communication device had previously been automatically deleted, and the only means of assessing this was via personal consultation. Kootz Decl. ¶ 4. An application was then installed on the Secretary's device on July 21, 2025 to ensure all Signal messages were preserved moving forward, regardless of deletion timelines. *Id.* ¶ 6. State's search strategy—identifying the personnel responsible for the sought specific materials, asking them to search their records, securing the relevant documents from them, and ensuring future responsive records are captured—is a "method[] which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). And, as is typical, a more fulsome declaration describing the adequacy of the search can be provided at the appropriate stage.

Nonetheless, Plaintiff points to information gleaned from news articles—i.e., errant screenshots from devices that have not been confirmed as belonging to Secretary Rubio—to argue essentially that State's search may not have uncovered every responsive document. This argument is futile because the focus of the Court's inquiry is on the reasonableness of the search process, not the documents produced. *See Iturralde v. Comptroller of Currency,* 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."). In any event, searching for records responsive to a FOIA request is a process that requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and is "hardly an area in which the courts should attempt to micromanage the executive branch." *Schrecker v. DOJ*, 349 F.3d 657, 662 (D.C. Cir. 2003) (quoting *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002)). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). Accordingly, "mere speculation that as yet uncovered documents might exist[] does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004).

Plaintiffs cite *Competitive Enterprise Institute v. Office of Science & Technology Policy*, 185 F. Supp. 3d 26 (D.D.C. 2016) to bolster their argument, a case in which an agency repeatedly made representations about the completeness of its search that were later proved factually incorrect. But that case involved markedly different circumstances. There, the agency initially reported there were zero responsive pages from draft papers. However, its representations ballooned from zero to an additional 11 pages of responsive material, then to 47, 52, and finally,

112 pages of responsive material. *Id.* at 28-30. In choosing to permit limited discovery there, this Court found that the defendant's representations that it conducted a reasonable search were "proven to be inaccurate time and again." *Id.* at 29. But that pattern or any inaccurate representations are absent here. State has not materially changed its explanation of its search or represented that no responsive records exist. Rather, State has consistently explained the circumstances surrounding Secretary Rubio's Signal messages, including limitations on determining if auto-deletion timelines were set and by whom. In fact, Plaintiff itself acknowledges that Signal's group chat settings allow "[a]ny participant in a Signal chat [to] enable disappearing messages[.]" Mem. at 7 n.25. Plaintiff's mere disagreement with State's explanations and its speculation that more records must exist fails to establish any pattern, let alone a repeated pattern, of incorrect representations that warranted the kind of discovery permitted in *Competitive Enterprise.* Thus, *Competitive Enterprise* does not provide a basis for relief here.

Plaintiff included in its motion a footnote at State's request noting that, "[a]s Plaintiff requested, State agrees to make a supplemental production that it believes will resolve the issue between the parties." Mot. at n. 1. Plaintiff then argued in that footnote that the production offered in response to Plaintiff's request is "required by FOIA" and that the production would not "substantively address the serious questions about State's candor in the course of litigation, compliance with the Court's preservation order, and good faith processing of Plaintiff's raised by the agency's recent (and demonstrably selective) production showing that Secretary Rubio was a member of multiple Signal chats with autodelete enabled." *Id.* State strenuously objects to Plaintiff's characterization of the offered production as "required by FOIA"; to the contrary, State offered to provide a supplemental production as an accommodation to Plaintiff, at Plaintiff's request, in an effort to answer its questions and resolve this particular dispute. Plaintiff's motion,

however, makes clear Plaintiff does not believe any such production will resolve this dispute. As State maintains that the supplemental production is not required by FOIA, Plaintiff has affirmed that the offered production will not resolve this dispute, and Plaintiff has moved forward with its motion despite State's offer of accommodation, State withdraws its offer of a supplemental production and will stand on its response to Plaintiff's motion as provided herein.

In the meantime, State supplies a fourth declaration attached to this response that addresses the issues Plaintiff raises in its motion and further confirms State's consistent account. *See* Second Declaration of Timothy Kootz ("Second Kootz Decl."), attached as Exhibit 1. This declaration explains that, in response to Plaintiff's concerns, "the Office of the Secretary continues to confirm that it is not aware of any Signal records of the Secretary responsive to this litigation that were lost to auto-deletion since the initiation of the relevant FOIA request in this case on March 26, 2025." Second Kootz Decl. ¶ 8. As the declaration further explains, "the Department's only available means of assessing whether potentially responsive Signal messages of the Secretary were subjected to an automatic deletion since the initiation of the relevant FOIA requests was via personal consultation with the Secretary and/or his staff." *Id.* ¶ 7. But the mere "fact that the Secretary was a member of a Signal group chat in which the disappearing messages function was enabled does not necessarily mean that the Secretary also sent messages that may include federal records as part of that group chat." *Id.* ¶ 6.

Prior to the installation of LeapXpert to capture and preserve automatically any records in electronic messaging applications, "the Department's record-keeping policy at the time this litigation began instructed employees and Department personnel to take screenshots of and preserve electronic messages which contained federal and/or agency records." *Id.* ¶ 12. But such screenshots would not have been required to capture metadata about the chats, which at the time

State reasonably did not consider to be federal or agency records because it "did not regularly maintain, did not share internally, and did not use data for agency purposes concerning when an individual left a chat or entered a chat, or deletion timeframes." *Id.*; *see, e.g.*, *Cause of Action Inst. v. OMB*, 10 F.4th 849, 855 (D.C. Cir. 2021) (Internet browsing histories are not agency records under FOIA). Simply put, the metadata as requested was not considered an agency record at the initiation of this request.

Accordingly, the attached sworn declaration sufficiently addresses Plaintiff's purported concerns about preservation. State's submission of this declaration thus obviates any arguable purpose of requiring a "State official" to sit for a deposition. *Cf.* Mem. at 5. Even if the Court were to disagree whether State's declarations fully address these topics, the appropriate course would be to require the agency to supplement the declaration to address any perceived inadequacies, not to submit to a deposition. *See, e.g.*, *PETA v. USDA*, 918 F.3d 151, 159 (D.C. Cir. 2019) (affirming the denial of discovery and finding that an agency declaration would "moot" Plaintiff's claims); *Beltranena*, 770 F. Supp. 2d at 187 (denying requests for discovery and in camera review and instead ordering agency to supplement affidavits to establish that it conducted adequate searches and to provide particularized explanations for its segregability determinations); *Jarvik v. CIA*, 741 F. Supp. 2d 106, 122 (D.D.C. 2010) ("Even if an agency's affidavits regarding its search are deficient, courts generally do not grant discovery but instead direct the agency to supplement its affidavits."). For these reasons, the Court should deny Plaintiff's motion.

## II. Plaintiff's Motion Fails to Overcome the Presumption of Good Faith.

None of Plaintiff's speculation impugning the integrity of State's declarations shows any reason to conclude that State's declarations are untrue. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (plaintiff cannot overcome the presumption of good faith based on "purely speculative claims" that discovery will lead to evidence showing bad faith). Plaintiff

merely suggests that because some of the documents produced to date show deletion timeliness, the Court should allow discovery into who set the timelines and when. In fact, nothing in the documents produced in State's initial response contradicts the above-described explanations in State's declarations that "the Office of the Secretary continues to confirm that it is not aware of any Signal records of the Secretary responsive to this litigation that were lost to auto-deletion since the initiation of the relevant FOIA request in this case on March 26, 2025" or that "Secretary Rubio does not use the auto-deletion functions in third party messaging applications when sending communications that may include federal records." Second Kootz Decl. ¶ 8; First Kootz Decl. ¶ 4. To be sure, Deputy Assistant Secretary Kootz "confirm[s] from [his] personal review of the records preserved by the Department that none show instances of Secretary Rubio enabling the autodelete feature in any message thread." Second Kootz Decl. ¶ 8.

Plaintiff argues that relief is necessary to enforce the Stipulated Preservation Order, but it fails to show any reason to believe that State has failed to comply with that Order and thus fails to justify the extraordinary request for discovery. *See Wilson v. U.S. Dep't of Transp.*, No. 10-5295, 2010 WL 5479580, at *1 (D.C. Cir. Dec. 30, 2010) (per curiam) (holding that "[b]ecause appellant offered no evidence of bad faith to rebut the agency's affidavits, he is not entitled to discovery"); *Cause of Action Inst. v. OMB*, Civ. A. No. 18-1508 (RBW), 2019 WL 6052369, at *8 (D.D.C. Nov. 15, 2019) (holding that discovery is inappropriate "because the defendants have submitted reasonably detailed declarations that are probative of the issues in this case, and the plaintiff has not established bad faith on the part of the defendants"); *Reich v. U.S. Dep't of Energy*, 784 F. Supp. 2d 15, 22 (D. Mass. 2011) (denying request for discovery where agency affidavits were "'reasonably detailed' and 'submitted in good faith'" and plaintiff presented no evidence that declarants "misled the [c]ourt or had any motivation to do so" (quoting *Schrecker*, 217 F. Supp.

2d at 35)); *Fla. Immigrant Advoc. Ctr. v. Nat'l Sec. Agency*, 380 F. Supp. 2d 1332, 1343 (S.D. Fla. 2005) (denying discovery because agency's affidavit was "sufficiently detailed, nonconclusory and submitted in good faith").

As a threshold matter, the Stipulated Preservation Order is entirely prospective, as is the nature of a preservation order. *See, e.g.*, *Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, Civ. A. No. 14-765 (GK), 2016 WL 10676292, at *2 (D.D.C. Dec. 12, 2016) ("A Motion to Compel Preservation is subject to the same analytical framework as a motion for injunctive relief."). The Order required State to do two things going forward: (1) issue a preservation notice to the Secretary reminding him of his preservation obligations, and (2) submit a declaration describing, among other things, State's measures to preserve potentially responsive records and its efforts to determine if any potentially responsive records have been deleted or lost since the FOIA requests were submitted. *See* Preservation Order at 1-2. Plaintiff offers no evidence showing that State has failed to take such actions. Plaintiff's argument that conversation threads from January 2025 show deletion timelines set is entirely irrelevant to whether State has complied with the Stipulated Preservation Order entered on September 2, 2025. State (1) collected the records responsive to Plaintiff's FOIA request, (2) preserved them appropriately, (3) put mechanisms in place to ensure all messages going forward would be properly preserved, (4) pursued all avenues available to it to determine whether any records were deleted, and (5) reported to the Court through sworn affidavits of career civil servants with expertise in records management the steps taken to determine whether records were deleted and the determinations made once those steps were completed. Plaintiff offers no evidence that any of the foregoing actions were undertaken in bad faith or that any evidence suggests State made untrue statements.

Plaintiff does not engage with State's repeated explanation that any member of a conversation could set a timeline, that Department policy at the time required preservation through screen shots sent to Department recordkeeping systems, and that "the Office of the Secretary continues to confirm that it is not aware of any Signal records of the Secretary responsive to this litigation that were lost to auto-deletion since the initiation of the relevant FOIA request in this case on March 26, 2025." Second Kootz Decl. ¶ 8. Deputy Assistant Secretary Kootz also "confirm[s] from [his] personal review of the records preserved by the Department that none show instances of Secretary Rubio enabling the autodelete feature in any message thread." *Id.* State should not be ordered to supply additional explanation when Plaintiff offers nothing to discredit the existing and well-reasoned explanation in the sworn declarations already submitted. Although these sworn affirmations should satisfy the inquiry, Plaintiff nonetheless continues to focus on irrelevant details as purported "inconsistenc[ies]," such as undated references to deletion timeframes. Mem. at 3-5. Evidence of deletion timelines, however, does not evidence or confirm that any records were not properly preserved under the Stipulated Preservation Order, and it does not raise any indication of bad faith on behalf of the State Declarants.

In the absence of any evidence suggesting bad faith, Plaintiff has failed to show any reason to hold that this is the rare case in which the Court should allow discovery. *Ocasio v. DOJ*, 67 F. Supp. 3d 438, 440 n.6 (D.D.C. 2014) (discovery is not permitted when it would merely "afford the plaintiff an opportunity to pursue a bare hope of falling upon something that might impugn the affidavits" submitted by the government (citation modified)). At most, Plaintiff might believe that State's declarants are wrong about who activated deletion timelines. But Plaintiff sets forth no basis for overcoming the presumption of good faith accorded the agency's declarations. Plaintiff entirely fails to address the "general principle" that government officials must be afforded "the

'presumption of legitimacy accorded to the Government's official conduct,' to which the Supreme Court has referred in the FOIA context." *PETA*, 918 F.3d at 157 (quoting *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004)). This "presumption of regularity supports the official acts of public officers." *Id.* (quoting *Nat'l Archives & Recs. Admin.*, 541 U.S. at 174). Furthermore, "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id.* The onus is on Plaintiff to overcome this presumption by setting forth the "clear evidence" necessary. Here, Plaintiff has not set forth such evidence, and instead offers only mere speculation.

Even if Plaintiff believed, for instance, that the Office of the Secretary was wrong, a mere mistake about the facts in a declaration would be insufficient to demonstrate bad faith. *See Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489-90 (2d Cir. 1999) (finding discovery unwarranted based on plaintiff's "speculation that there must be more documents" and that agency acted in "bad faith" by not producing them); *Freedom Watch, Inc. v. Nat'l Sec. Agency*, 220 F. Supp. 3d 40, 46 (D.D.C. 2016) (denying motion for discovery and finding that "'mistakes do not imply bad faith[;]' '[i]n fact, [an] agency's cooperative behavior of notifying the Court and plaintiff that it . . . discovered a mistake, if anything, shows good faith'" (quoting *Fischer v. DOJ*, 723 F. Supp. 2d 104, 108-09 (D.D.C. 2010))).

Far from showing a legitimate need for discovery, the present motion is yet another attempt by Plaintiff to circumvent the ordinary and proper course of State's FOIA processing by invoking alleged concerns about preservation. *See, e.g.*, Joint Status Report (Oct. 31, 2025), ECF No. 27. For instance, Plaintiff previously requested that State provide the records currently at issue showing alleged deletion timelines, under the purported rationale that such production was essential to Plaintiff's preservation motion (which at that time had already been addressed by the

entry of the Stipulated Preservation Order). *Id.* at 8. In response, State similarly explained at that time why Plaintiff's request amounted to one for immediate processing of its FOIA requests to State and therefore was both premature and beyond the scope of the Stipulated Preservation Order. *Id.* at 3. Plaintiff's motion does not show that State has acted in bad faith and thus offers no legal basis for the rare and unusual discovery it requests. *Thomas v. Dep't of Health & Hum. Servs.*, 587 F. Supp. 2d 114, 115 n.2 (D.D.C. 2008) ("Because discovery is an extraordinary procedure in a FOIA action, and [Plaintiff] gives no reason for needing discovery, his request will be denied."). This Court should again reject Plaintiff's inappropriate and untimely challenge to State's FOIA response.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be denied.

Dated: September 11, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

*/s/ Pamela I. Amaechi*
PAMELA I. AMAECHI
D.C. Bar No. 1672958
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 598-5093
E-mail: pamela.i.amaechi@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I, Pamela I. Amaechi, hereby certify that on September 11, 2026, I electronically filed the foregoing using the Court's CM/ECF system, which automatically serves this document upon all counsel of record, in keeping with LCvR 5.4(d).

*/s/ Pamela I. Amaechi*
PAMELA I. AMAECHI

*Counsel for Defendants*